PROVOSTY, J.
Plaintiff, an old lady, was crossing tlie neutral ground on Oanal street going down town, along the line of the prolongation of the woods side sidewalk of Camp street, out of which street she had come, when she was struck and knocked down by one of the Prytania street cars of the defendant company, which had come out of Gamp street behind her, following the curve by which the cars from that street come upon the neutral ground on Canal street. There are at that place on this neutral ground, within a space of 60 feet, four straight tracks going up and down Canal street, and two curved tracks going in and out of Camp street. A pedestrian, following the line which plaintiff was following, crosses, first, the curved track used by the cars that go from Canal into Camp. He steps from this curved track upon the first straight track. Then 5 feet 9 inches further he comes upon the next curved track, or that used by cars going from Camp into Canal, which connects at that point with the second straight track. Plaintiff says that before venturing upon the tracks she looked to see whether any cars were so near as to prevent her crossing, and that she saw none. She says she looked “every way.” Had she looked behind her, over her right shoulder, she would have seen the car which eventually struck her. This car was at that moment either at a stop on Camp, or was moving out of Camp into Canal. Plaintiff was 79 years old, but active; and her sight and hearing were good. Her occupation necessitated her going about in the streets and using the cars a great deal. Cars are constantly passing upon the straight tracks on Canal street, and all of them, more or less, sounding their gongs. So great and constant is the noise that about an even number of the bystanders did not hear the car that injured plaintiff sound its gong. The police officer, stationed at this crossing because of its dangerous character, aptly describes the situation when he says:
“I can’t say whether he was ringing his bell’ or not, because there are always several cars around there, and there were bells ringing, and there were other cars on the crossing. I don’t know which one was ringing the bell, though.”'
Having created this confusion of noises- and car tracks at this crossing it behooved the defendant company to be extraordinarily careful in the handling of its cars along there. Instead of this, the testimony satisfies us the motorman was not even looking ahead. Two disinterested witnesses so testify. One-of them says:
“An outsider attracted his attention, and when he noticed he was about to run over the-lady he quickly applied the brakes.”
This outsider was Mr. Numa Jordy, who-testified that in the direction in which the-motorman was looking he could not have-seen plaintiff.
“He must have been looking over her head. He made no movement, either on the brake or on the power lever, that I saw, until I made the exclamation. The car could not then have-been more than three or four feet from Mrs.. Hanna.”
These two eyewitnesses, both of them intelligent men, found that the accident occurred as the result of the inattention of the-motorman; and we discover nothing in the-record to disturb that conclusion. The motorman testifies that he saw the old lady, but thought she would stop before reaching the' track, and that he did all in his power to-stop the car as soon as he saw her step upon the track. Guilbeau, the employe of the defendant company stationed at this corner for' shifting the tracks, says that the motorman was looking. This witness says that he saw that the old lady was not paying attention to the car behind her, and that he whistled to her to attract her attention. If this man thus realized the danger in time, as he thought, to give plaintiff warning, a fortiori should the *637 motorman have done so. But the testimony of this man does not impress us favorably. We prefer to rest the case upon the testimony of the two witnesses who say positively that the motorman was not paying attention.
So far as contributory negligence is concerned, we are not sure that the old lady did not stop and loot, as she says she did, and that the reason why she was overtaken by the car was not that the car came on faster than she thought it would, and faster than it should have done.
At all events, she was entirely unconscious of the danger, and the motorman had a clear chance of averting the accident. He was coming behind her, and should have taken sufficient care not to run upon her. His not doing so was the proximate cause of the accident.
The immediate injuries of plaintiff were a fracture of the fourth rib and of the metacarpus bone of the right hand, and contusions about the body and limbs. The shock affected her nervous system and her heart. She was confined to her bed from two to three months, and it was four months before she could go out, even for a carriage ride. The fracture of the rib superinduced pneumonia. Her sufferings were great. The permanent injuries are the loss of the use of one hand, and inability now to go about without the use of a stick, and her nervous system more or less affected. The actual expenses in doctor’s fees, trained nurses, drugs, etc., amounted to $1,799.69.
The jury allowed plaintiff $1,000. We fix the damages for suffering and permanent injuries at $3,000, which, with the $1,799.69 of actual expenses, makes an aggregate of $4,-799.69, for which plaintiff is entitled to judgment.
It is ordered, adjudged, and decreed that the judgment appealed from be increased to $4,799.69, with 5 per cent, per annum interest on $1,000 thereof from March 2, 1909, and like interest on the balance from this date. Defendant to pay all costs.