No. 9896.
Orleans Appeal.

## ALEXANDER GOUZIEN, Appellant, v. MRS. THERESA FERACI.

(April 13, 1925, Opinion and Decree.)

*(Syllabus by the Court.)*

1. **Louisiana Digest—Negligence—Par. 27.**

The defense of contributory negligence will not avail the defendant if by reasonable care on his part the accident could have been avoided.

2. **Louisiana Digest—Negligence—Par. 29.**

The intoxicated condition of the plaintiff at the time of the accident does not take away his right of action but only accentuates the necessity for greater care on the part of the defendant.

3. **Louisiana Digest — Automobiles — Par. 4 (b).**

It is the duty of a chauffeur on approaching a street crossing to have his machine under full control so that it may be stopped quickly in case of necessity.

(Civil Code, Art. 2315. Editor's Note.)

Appeal from Civil District Court, Hon. H. C. Cage, Judge.

The plaintiff alleges that he was knocked down by an automobile driven by the defendant and injured, and claims damages from her.

Judgment for defendant. Plaintiff appealed.

Judgment reversed.

J. O. Chamberlain, attorney for plaintiff and appellant.

Dufour, Goldberg, Krammer & Wolf, attorneys for defendant and appellee.

CLAIBORNE, J. The plaintiff alleges that he was knocked down by an automobile driven by the defendant and injured, and claims damages from her.

He alleges that on January 26, 1924, at about 1:30 p. m. he was in the act of crossing the uptown side of Esplanade Avenue at the intersection of Decatur Street; that he was walking from the neutral ground to the sidewalk on the wood side of Decatur Street; that he had nearly reached the sidewalk when an automobile driven by defendant on Esplanade Avenue towards the river knocked him down and injured him; that his injuries consist of a sprained wrist and possible fracture of the forearm, cuts in the face, injury to the eye, and severe contusions of the body; that he was incapacitated from work for twelve weeks; that he is a carpenter earning eight dollars a day; that the accident was caused by the negligence of the defendant and by her violation of the traffic ordinance, Section 2 of Article 7 thereof, which reads as follows:

"At street intersections not under police signal control, pedestrians shall have right of way over vehicles, provided pedestrians shall give warning of their intention to cross the street by holding up their hand in the manner to be plainly seen."

That his damage is as follows:

| | |
|---|---|
| Doctor and medicines | $ 100.00 |
| Loss of salary | 600.00 |
| Physical pains and mental anguish | 2,700.00 |
| | $3,400.00 |

He further avers "that because of his poverty and want of means he is unable to pay the cost of this suit in advance, or as they accrue nor to give bond for the same"; and he prays "for authority to litigate this suit without payment of costs and without furnishing bond for same."

The defendant denied each allegation of plaintiff's petition, but admits that plaintiff was injured at the time alleged and by defendant's automobile.

She further averred that she was driving her car at about five or six miles an hour, on the south side of Esplanade Avenue towards the river at the rate of about five or six miles an hour; that on reaching the intersection of Decatur Street she saw some pedestrians on the neutral ground starting to cross Esplanade Avenue; that

she blew her horn three times to indicate her approach; that all the pedestrians stopped with the exception of the plaintiff who continued diagonally across the street as if to make the sidewalk at the river side of Decatur Street; that the plaintiff suddenly staggered to his right and thus placed himself directly in the path of defendant's car and struck the left front fender of her car and was knocked down and away from the car; that the injury was due solely to plaintiff's actions and from the fact that he was at the time intoxicated.

There was judgment for defendant and plaintiff has appealed.

The plaintiff testifies that he was standing on the neutral ground of Esplanade Street near Decatur talking to a friend; that he proceeded to cross Esplanade Street in a straight line, when at about five or six feet from the sidewalk he was knocked down by an automobile running on Esplanade Street towards the river.

His friend Hensen corroborates him; plaintiff was more than half way across the street when he was struck; the automobile carried him on the other side of Decatur Street a few feet from the sidewalk.

Mrs. Stipelovich, another witness, corroborates Hansen. All the witnesses say they heard no horn.

The defendant gives another version. She says she left her house on St. Bernard Avenue and went to Esplanade and was going to her mother's house on Decatur Street, and when she got near the corner of Decatur Street she saw some people on the neutral ground, and she saw they did not stop; she turned her car to the right, and as she did so a man staggered towards the Mint, and ran into her right (left) fender and fell; when her fender struck him he was towards the river side of Decatur Street; she was going five or six miles an hour; at that rate she could stop her car in about two feet; she had no time to stop

her car; when she reached Decatur Street she saw plaintiff in the middle of Decatur Street and the middle of Esplanade Street walking towards the Mint, more on the river than on the lake side; there was a wagon on Decatur Street on the wood side near the intersection of Esplanade Street, and when she turned into Decatur Street she had to make a wider turn to get around the wagon; she was on Esplanade when she began to make the turn; if there had been no wagon on Decatur Street she would have turned as close to the corner as possible; when she saw the wagon she went more towards the river; she first saw the plaintiff when he was about five feet from her; the plaintiff walked into the front of her left fender as she was making the turn; she traveled about five feet while the man was upon the fender and he fell to the ground; the plaintiff was traveling from the neutral ground on the lake side of Esplanade Avenue walking towards the river side of Decatur Street towards the sidewalk.

The defendant produced no witness to the accident.

Whether we adopt her theory of the accident or that of plaintiff and his two witnesses, the conclusion appears to us the same. It is true that it was daylight and that plaintiff could and should have seen defendant's automobile coming, and he testifies that he saw it. He might have been more cautious and thus have avoided the accident. But the same conditions prevailed as to the defendant. She testifies that she saw people on the neutral ground and when they did not stop, she turned to the right. A greater degree of care was expected from her because she was driving a dangerous machine. Albert vs. Munch, 114 La. 686, 75 South. 513; Alfred Hiller Co. vs. Insurance Co. of North America, 125 La. 944, 52 South. 104.

From her own testimony, she seems to have followed the plaintiff in his footsteps.

First, when he stepped into Esplanade, then when he turned towards the river, and crossed diagonally, at the junction of Esplanade and Decatur Streets, until she reached him near the sidewalk of Decatur on the river side.

He was certainly ahead of her, or at least upon her left side, and she was behind him. In that position, he could not see her but she could see him. It was her duty under all conditions, but specially at a street crossing, to look for pedestrians upon her path and to have her automobile under control. Duffy vs. Hickey, 151 La. 274-299, 91 South. 733; Carroll vs. New Orleans Ry. and Light Company, 125 La. 903, 51 South. 1029; Shields vs. Fairchild, 130 La. 648, 58 South. 497; Simpson vs. New Orleans and C. R. Light and Power Company, 112 La. 237, 36 South. 335.

She says herself she could have stopped in about two feet. Admitting that the plaintiff was negligent, the defendant had the last clear chance to avoid the accident and she did not do it. As was said in Burvant vs. Wolfe, 126 La. 787 (190), 52 South. 1023.

"Therefore, had the defendant been duly observant as any one using a death-dealing machine upon a public street is bound to be, he would have noticed that the course of the boy was convergent with his own, and that the boy was not paying attention." Reed vs. Sievers, 146 La. 391, 83 South. 685; Fernandez vs. Montz, 151 La. 302, 91 South 742; Hanna vs. New Orleans Ry. and Light Company, 126 La. 634, 52 South. 855; 155 Pac. 147, 9 Court of Appeal 351; Jones vs. Mackay Telegraph Cable Company, 137 La. 121, 68 South. 379; 156 Pac. 51.

The defendant urges that the plaintiff had been drinking just before the accident and that he was then drunk. There is no evidence that, at the time of the accident or before, he was under the influence of liquor. The evidence is to the contrary, although he had been indulging in two drinks. Symptoms of drunkenness developed only after the accident when he was brought to the hospital where he was put to bed and he cursed and shrieked and had to be tied to his bed. But being drunk did not put him beyond the protection of the law. On the contrary, it placed him in the position of a child—or of those unable to take care of themselves and called for more caution on the part of others. Horsthemke vs. New Orleans Ry. and Light Company, 146 La. 932, 84 South. 210.

The doctrine of the last clear chance has been applied with great favor as to these. McClanahan vs. Vicksburg, S. and P. Ry. Company, 111 La. 781, 35 South. 902; Thomas McGuire vs. the Vicksburg, Shreveport and Pacific Railroad Company, 46 La. Ann. 1543, 16 South. 457.

The extent of plaintiff's injury is stated by a physician for defendant to be a one-inch fracture of the left forearm, capable of knitting, under proper treatment, at the very maximum in eight weeks, after which the patient would have full use of his arm. He also had a small scar about a half-inch over the left eye. He remained in the hospital one day and then returned to his home.

While a physician for the plaintiff testifies that plaintiff suffered from a concussion of the brain and remained unconscious for twelve hours at the Charity Hospital, the evidence of the Hospital physician and the nurse is that the plaintiff was howling drunk when he reached the hospital, and that he woke up the next morning and went home in the cars with his wife.

Plaintiff testifies that he cannot use his hand in his business of carpenter, and that he has pains in his head and cannot sleep.

We do not find that his testimony is sufficient to establish these injuries.

There is no testimony whatever in support of the claim for doctor and medicine.

Although he claims $600 for loss of salary he fails to testify that he was getting

any salary. He says he was earning eight dollars a day, but does not say where nor from whom, and that he was jobbing for himself. His ability to have earned eight dollars a day every day during the twelve weeks following his accident was entirely uncertain. Judging the future from the past, it was speculative, as he sues under the pauper act.

For his pain and mental anguish and loss of work we shall allow Five Hundred Dollars.

It is therefore ordered that the judgment herein be reversed and set aside, and it is now ordered that there be judgment condemning the defendant, Mrs. Theresa Feraci, wife of Joseph Feraci, to pay to the plaintiff Alexander Gouzien, Five Hundred Dollars with five per cent per annum interest from February 26, 1924, till paid and all costs of suit.