MRS. ROGER A. DILL, Appellant, v. DR. E. C. COLLEY

---

(October 5, 1925, Opinion and Decree.)
(November 30, 1925, Rehearing Refused.)
(January 4, 1926, Writ of Certiorari and Review Denied by Supreme Court.)

---

*(Syllabus by the Court.)*

1. **Louisiana Digest — Automobiles — Par. 4 (c), 4 (d).**
Regulations concerning the speed of automobiles must be obeyed and if an injury results to a pedestrian from their violation the driver must answer for the damage.

2. **Louisiana Digest—Courts—Par. 60.**
It is the duty of the Courts to see that ordinances enacted for the public safety should be rigidly enforced in aid of the remedy for the mischief sought to be guarded against.

3. **Louisiana Digest—Automobiles—Par. 4.**
When the driver of an automobile has created a dangerous condition from which damages resulted he will not be heard to excuse himself by the plea that owing to that condition he could not avoid the damage.

4. **Louisiana Digest—Negligence—Par. 14.**
A defendant is liable in damages resulting from his negligence if by proper care he could have avoided the damage, even if the person injured was originally guilty of negligence and created the situation of damage to himself.

5. **Louisiana Digest—Damages—Par. 105.**
Three thousand dollars damages allowed for fracture of skull and concussion of brain.

(Civil Code, Art. 2315. Editor's note.)

Appeal from Civil District Court Div. "G". Hon Sam A. LeBlanc, Judge.

This is a suit arising out of an automobile accident in which the plaintiff was run down by an automobile. There was judgment for defendant and plaintiff appealed.

Judgment reversed.

H. W. Robinson, of New Orleans, attorney for plaintiff, appellant.

J. Zach Spearing, of New Orleans, attorney for defendant, appellee.

CLAIBORNE, J. Plaintiff was run down by an automobile of the defendant and sues him for damages.

Plaintiff avers that on August 16, 1922, at about 8 o'clock a. m., she was standing on the downtown river side of St. Charles and Eighth Streets seeking to cross St. Charles Street in the direction of the Lake; that she looked and listened before entering upon the asphalt roadway; that she saw an auto approaching about 400 feet away and believing that she would have time to cross started to do so; that before she had crossed an auto driven by the defendant E. C. Colley, approached at a high rate of speed in excess of 25 miles, prohibited by the traffic laws, struck her and threw her to the ground, dragging her for a considerable distance; that the defendant was guilty of negligence in driving his car as one of the three automobiles driven abreast down St. Charles Avenue plaintiff further alleged that she received a concussion of the brain and was scarred about the face and head, and received brush

burns and contusions all over her body; that she was taken to the Touro Infirmary where she was operated on for bone pressure against the brain, on both sides of the skull resulting in being permanently scarred; that she remained in the Touro Infirmary a period of fifteen days until August 31st, when she was taken to her home where she remained confined to her bed a period of two weeks until September 20th; during all of which time she suffered great pain; plaintiff claims the following damages:

| | |
|---|---|
| Suffering | $ 5,000.00 |
| Temporary injuries | 5,000.00 |
| Permanent | 3,000.00 |
| Future | 5,000.00 |

$18,000.00

The defendant admitted a collision at or near the corner of St. Charles Avenue and Seventh Street between his automobile and the plaintiff, but denied all the other allegations. He further alleged "that the accident was caused entirely through the fault and negligence and want of care of the plaintiff, who without warning and in disregard of the rules of the road and of safety suddenly ran in front of plaintiff's automobile which was moving at a moderate rate of speed and less than allowed by the City Ordinance or the law; that when plaintiff ran in front of respondent's automobile his said automobile was so close to plaintiff that it was impossssible to prevent the collision notwithstanding respondent did all in his power to prevent the accident".

The case was tried by a jury who returned a verdict for the defendant, by a vote of 9 to 3.

Thereupon a judgment was rendered for the defendant.

The plaintiff appealed.

There is very little conflict in the testimony. The facts as we find them are as follows:

The defendant was the owner of an Overland automobile which he drove himself. On the morning of the accident he left his home on Napoleon Avenue at about eight o'clock to go down to his office in the Godchaux Building; on his way along Napoleon Avenue he picked up four gentlemen to drive them down town; Messrs. Wilson, Englisbee, Green and Orchard. They all four testified. They drove up Napoleon Avenue to St. Charles Avenue, thence down towards Canal Street, at a rate varying from 15 to 20 miles an hour; there was much congestion on the road. When they reached Ninth Street they travelled abreast or nearly abreast with two other automobiles; one towards the river side near the sidewalk driven by John J. Zollinger, defendant's car in the middle a few feet to the rear, and a third near the neutral ground. On the river downtown side of Eighth Street upon the roadway a few feet from the sidewalk stood the plaintiff, waiting to catch a street car to go down. As the three cars approached her in the position above described the plaintiff started to cross the stret; Zollinger saw her, swerved his car to the right and stopped and thus avoided the plaintiff. The plaintiff proceeding found herself directly in the path of the oncoming defendant car, which struck her with the headlight or fender, knocked her down, dragged her some distance and inflicted upon her the injuries described in her petition.

We think the defendant liable. He violated the traffic ordinance and his violation was the direct cause of the accident.

1st  He was travelling at an excessive rate of speed at the particular place and under the conditions prevailing at the time of the accident.

It is true that the speed limit is restricted at 25 miles on right of way neutral ground streets. But that rule is modified by the ordinance itself and by surrounding conditions.

The last sentence under the title of "Caution to pedestrians, drivers, and operators of vehicles" on page 2 of Street Traffic Ordinance No. 6173 contains this warning:

"Drivers and operators of vehicles should on their part drive slowly and cautiously when crossing street intersections and making turns."

And upon p. 14 of the same ordinance is this modification:

"Reckless driving, nothing in the foregoing sections shall be so construed as to mean that vehicles shall not at all times be driven with due regard to the rights and safety of others on the public streets, or that the speed may at any time be greater than is safe and proper under the conditions then obtaining."

Section 19 of Act 120 of 1921, p. 286, being an Act to regulate vehicles using the highway of the State reads as follows:

"Sec. 19. That subject to parochial and municipal regulations every person operating a motor vehicle on any highway or road in this State shall run it at a rate of speed at no time greater than is reasonable and proper having regard to the traffic and the use of the highway or road and the safety of the public. * * *

"It shall be *prima facie* evidence of a rate of speed greater than is reasonable as aforesaid if a motor vehicle is operated * * * at a rate of speed greater than ten miles an hour where the chauffeur's view of the road traffic is obstructed whether upon approaching the intersection of highways or roads, or in traversing a railway or highway crossing or in going around a corner or curve in a street or highway."

It will thus be seen that the rate of speed fixed by the Ordinance is not a license to use it under all conditions but only a rule that it shall not be exceeded in any case.

How fast an automobile may be driven under given conditions is a question to be decided by the customary rules of care and negligence. Huddy, S. 279, 332, 443, 444; Eichorn vs. New Orleans & C. R. Light & Power Co., 112 La. 244, 36 South. 335.

The evidence is that Zollinger accelerated the speed of his car when he reached Eighth Street and that he was some feet ahead of the defendant's car. Zollinger says that when he saw the plaintiff walking in front of his car that he stopped within fifteen feet. The defendant said that running at 15 miles an hour he could stop within twelve feet.

We conclude that if he had reduced his speed on approaching Eighth Street, as he was directed to do by law and reason, that he could have seen the plaintiff and stopped his car and thus avoid the accident.

It was an automobile driver's duty, when he approached a street crossing where people were, constantly crossing, to have the automobile under full control, so that it could be stopped quickly in event of emergency. Duffy vs. Hickey, 151 La. 274, 91 South. 742; Fernandez vs. Montz, 151 La. 302, 91 South. 742; Southall vs. Smith, 151 La. 967, 92 South. 402; Mequet vs. Algiers Mfg. Co., 147 La. 364, 84 South. 904; Wilkins vs. Featherstone Transfer Co., 156 La. 601, 100 South. 732.

There is no evidence that the defendant slackened his speed as he approached Eighth Street. On the contrary, it appears that he continued running at the same rate of speed. It was only after he struck the plaintiff that his speed was reduced, until he reached nearly the corner of Seventh Street when he stopped a distance of about 150 feet.

"Statutory and Municipal regulations, as to the speed of automobiles, are to be obeyed, and, if an injury results to a pedestrian from a violation of such a regulation, the driver, as a general proposition,

must answer for the damages." Huddy, Sec. 444; Tessier 82; Orl. App., Nos. 8820, 8905, 9205.

2nd. The defendant has also violated another provision of the traffic Ordinance.

Sec. 1 of Article 1 of the same Ordinance provides:

"A vehicle, except when passing a vehicle going in the same direction shall keep to the right and as near the right hand curb as possible."

Sec. 2:

"Divided Streets, on any avenue, street or boulevard, divided longitudinally by a parking or walk, vehicles shall keep to the right of such division. On streets so divided all vehicles except when in the act of passing a vehicle ahead, shall keep to the right of the center of the roadway so as to permit the passing of faster moving vehicles on the left."

Sec. 3:

"(d) No vehicles shall attempt to pass two other vehicles which are driving abreast, or nearly abreast."

The meaning of those sections evidently is that there shall be only two lines of travel upon the street, one composed of automobiles running behind each other at ordinary speed, slow moving, and the other composed of automobiles running at a faster rate so as to pass the former, or fast moving. The middle course is prohibited, so that no automobile can legally drive in the middle between these two lines, so as to form a dangerous congestion, and bring about the conditions which existed at the time of this accident.

When Zollinger, the driver of the car near the sidewalk, reached Eighth Street he saw the plaintiff standing at the corner and she saw him.

She passed in safety of his car and Zol-

linger avoided her by swerving to the right. Not so however with the defendant. He did not see the plaintiff standing at the corner, and when she suddenly stood in front of his car, to use his own language, it "just looked like it came out of the earth in front of me and I was about 10 or 15 feet away from her". She did not see him either. Zollinger's car intervened between them and intercepted the view of both. The plaintiff had seen Zollinger's car, had calculated her distance, and passed in front of it in safety. If defendant had not been running his car in the middle of the street and the two lines of cars, the plaintiff when she stopped in the middle, as defendant says she did, would have escaped unhurt.

The defendant himself testifies:

"When I saw her I saw I would run completely over her; she was standing with face turned towards me and completely dazed it seemed, and after the car passed toward the right curbing she looked like she was running past that and that she stopped still in front of me."

If the defendant had been running at a reduced rate he might have stopped within 10 or 15 feet after he saw her. Zollinger stopped within 15 feet, and the defendant testified that going at 15 miles he could stop his car "when going 15 or 16 miles an hour in 10 or 15 feet, absolutely stop".

It is the duty of a chauffeur on approaching a crossing to have his car under control. Duffie vs. Hickey, 151 La. 274, 299, 967.

The defendant's plea is that he did not see the plaintiff and could not see her.

But he brought on that situation himself; the very situation which the ordinance intended to reach and prevent. It was his fault if he did not see plaintiff and she could not see him. "An automobile driver

cannot put himself in a position where, in order to save himself, he must run into some one else, and then plead that he could not help it, and therefore is not liable." Southall vs. Smith, 151 La. 969, 92 South. 402.

"Q. Now, your being six or eight feet behind the machine on your right, did not screen your view of the Eighth Street intersection as you approached it, did it?
"A. Well, no; but it (did) screen the object though that was standing close to the curbing; if there was anybody standing there it would screen me from seeing a person running in front of the other machine.
"Q. Then your answer is that you could not, because you were six or eight feet behind the car on your right, see anybody attempting to cross this St. Charles Street roadway from your right; that is your answer?
"A. I could not say any more than that."

"Where a street railroad company had created a confusion and noises and car tracks at a crossing, it was bound to use extraordinary care in handling its cars there to prevent injuries to pedestrians." Hanna vs. New Orleans Ry. & Light Co., 126 La. 634, 52 South. 855.

In the case of Carroll vs. N. O. Ry. and Lt. Co., 125 La. 898, the court said on p. 902:

"We have recently had occasion to refer to an ordinance of the City which makes it the duty of the motorman in charge of a car on one or two lines of parallel tracks, who would see a car upon the adjacent parallel tracks stop to discharge a passenger, to stop his own car in order to give time to any passenger who might attempt to cross the street in the rear of the other car, time to do so in safety." Jones vs. New Orleans Ry & Light Co., 123 La. 1060, 49 South. 706.

"The terms of the ordinance do not cover this case, but the principle upon which the ordinance is founded finds direct application to these narrow streets along which there runs a single line of railway tracks, with reference to the duty of a motorman to secure the safety of a person who might seek to cross the street directly in the rear of a wagon.

"The motorman testified that he was unable to see Mrs. Carroll by reason of the intervening wagon and horses; but that is the very reason why he should have exercised special and additional caution in the management of his car. He was obliged to know that, if he could not see any one on the crossing because of the intervening wagon and horse, for the same reason a person at the crossing would not have seen the car. He should therefore, have governed himself accordingly." Shields vs. Fairchild, 130 La. 648, 58 South. 497.

"It is the duty of the court to see that ordinances enacted for the public safety should be rigidly enforced in aid of the remedy for the mischief sought to be guarded against." Jones vs. New Orleans Ry. & Light Co., 123 La. 1060; Moren vs. New Orleans Ry. & Light Co., 125 La. 944, 52 South. 106.

But as a matter of fact the defendant had been attempting for a long distance to pass the two other vehicles which were driving abreast or nearly abreast of him.

"Q. Now, I am asking you whether you came down in that situation of three abreast practically from where you came into the Avenue down to Eighth Street?
"A. Not all the way, but as far as 50 or 80 yards you may say, we were about three abreast."

At the instant of the accident he did actually pass the Zollinger car on his right and the other on his left.

The defendant has charged contributory negligence on the part of plaintiff. But the plaintiff was not guilty of any negligence. She had no reason to believe that the defendant would be driving between two other cars in violation of the law. But even so, her negligence was not the cause of the accident. It was defendant's failure to stop in time to prevent the accident. In Hanna vs. New Orleans Ry. & Light Co., 126 La. 634, 52 South. 855, the court said:

"Where a street railway motorman, approaching a crossing, had the last clear chance of stopping the car and preventing the striking of plaintiff, a pedestrian from the rear had he been looking, but did not see plaintiff until it was too late to prevent a collision, his lack of care was the proximate cause of the accident." McGuire vs. V. S. and P. Ry. Co., 46 A. 1543, 16 South. 457.

"A railroad company is liable in damages for personal injuries resulting from the negligence of its engineer, who had the last clear chance to avoid the accident, even if the person injured was originally guilty of negligence in creating the situation of danger to himself and others." Jones vs. Mackay, 137 La. 121 (128), 68 South. 379; McClanahan vs. Vicksburg, S. & P. R. Co., 111 La. 781, 35 South. 902; Schwartz vs. New Orleans & C. R. Co., 110 La 534, 34 South. 667.

"Where that which one uses is an agency of an extraordinary dangerous character, the law throws upon the user the burden of the greater care." Moren vs. New Orleans Ry. & Light Co., 125 La. 944, 52 South. 106.

The only remaining question is the amount of the damages.

Dr. Urban Maes testifies that the plaintiff was brought to the Touro Infirmary unconscious bleeding from both ears; it was only the next day that she began to show some little signs of awakening and four or five days after she became conscious she had a fracture of the base of the skull with hemorrhage and concussion of the brain; she was operated on, the operation consisted in the cutting through the skull and exposing of the brain controlling the bleeding points, and a removal of parts of the skull on both sides above the ears an inch and one-half to two inches in diameter; she remained in the hospital about eleven days then taken home. At the end of six weeks she was barely able to get about and was slowly recovering; for the first few days while she was unconscious she suffered little but afterwards considerably; she has two scars on either side of the head one-quarter of an inch wide by three inches long; her injury brought on a sagging eye lid though the sight is not affected; her injury is not permanent.

The plaintiff testifies that she was earning at the time of the accident about $15 a week; that she was earning at the time of the trial April 2, 1924, about the same; she went out of the house for the first time about the fifth week; her hair was shaved off; she has not entirely recovered; the holes in her head are not healed up yet; she lost several teeth; she is 23 years old; was married at 19 and obtained a divorce. The Supreme Court allowed $1500 for the loss of teeth. Long vs. American Ry. Exp. Co., 150 La. 184, 90 South. 563.

In the case of Cusimano vs. Spies, 153 La. 551, the jury returned a verdict of $12,500 which the Supreme Court reduced to $3000. In that case the plaintiff suffered only a fracture of the base of the skull and remained at the hospital a week or ten days when he was discharged not cured but better. "Within one month after the accident he was sufficiently able to attend to his own affairs, to file this suit and to sign the petition personally". In the present case the injuries were much more severe and the plaintiff was disabled for a longer time. But Cusimano died three and a half months after the accident.

We have concluded to allow the plaintiff Three Thousand Dollars.

It is therefore ordered that the verdict and judgment herein be reversed and set aside; and it is now ordered that there be judgment in favor of plaintiff Mrs. Theresa Caubin divorced wife of Roger A. Dill condemning the defendant, Dr. Eugene C. Colley, to pay her the sum of Three Thousand Dollars with five per cent interest per annum from November 17, 1922, until paid and all costs of suit.