## LOCOCO v. PENDOLA.

### No. 5338.

Court of Appeal of Louisiana. Second Circuit.

Dec. 11, 1936.

Clarence J. Dowling, of New Orleans, and Jos. S. Guerriero, of Monroe, for appellant.

J. B. Thornhill and Theus, Grisham, Davis & Leigh, all of Monroe, for appellee.

TALIAFERRO, Judge.

Ignatius Lococo, as the natural tutor of his daughter, Josephine, an invited guest in the automobile of defendant when the accident occurred out of which this suit arose, seeks to recover herein damages sustained by his ward. The accident occurred on the Baton Rouge–Opelousas concrete highway at the intersection therewith of the highway that goes north toward New Roads. Pendola, the defendant, was traveling northerly; his car rammed the rear end of a De Soto automobile, owned by the Louisiana Highway Commission, then being operated by J. M. Higginbotham, an employee. The collision occurred about 9 o'clock in the morning of July 12, 1934. The weather was clear and visibility perfect for a long distance along the highway.

Plaintiff charges that defendant, at the time of and immediately preceding the impact, was driving his car in a reckless, careless, and negligent manner; that he was not exercising that degree of care and caution commensurate with the existing traffic conditions; and that he did not maintain efficient lookout and did not have his car under control. Particularizing the facts of the collision and the specific acts of negligence charged against defendant, plaintiff avers:

"Petitioner further shows that while his said daughter, the said Josephine Lococo, was a passenger in said automobile on July 12, 1934, and when the said automobile carelessly and negligently driven by Anthony Pendola, approached approximately

300 feet from the begining of the 'Y' intersection of the New Roads highway, a horse darted across the road in the path of the DeSoto automobile, traveling in the opposite direction; that the driver of the said DeSoto automobile applied his brakes and turned around in or near the center of the road; that the DeSoto made a complete turn, and although it remained on all four wheels, was in a position facing the same direction that Anthony Pendola was driving.

"That after the said DeSoto automobile had assumed the position above referred to, the said Anthony Pendola was still more than 100 feet away from the said DeSoto automobile; that between the DeSoto automobile and the right edge of the road, the side on which Pendola was driving, there was a clear space of approximately 24 feet, which was perfectly safe to drive on; that notwithstanding the fact that Pendola had a distance of more than 100 feet in which to see the DeSoto automobile after it had completed its turn, and that notwithstanding the fact that Pendola had a space of 24 feet on his right in which to pass the said DeSoto automobile, he, the said Pendola, because of his negligence in failing to keep a proper lookout, because of his negligence in traveling at an excessive rate of speed, or because of his negligence in becoming excited and upset, or because of his negligence in failing to exercise the proper caution, or because of his negligence in failing to have his car under control, or because of any or all of the above described acts of negligence, crashed into the said DeSoto automobile, severely injuring the said Josephine Lococo, minor daughter of your petitioner herein."

And we might add here that, unless the testimony establishes that the horse referred to was on the highway at the time mentioned and undertook to cross it in the manner and under the circumstances alleged, plaintiff cannot recover, because it is established to our satisfaction that the De Soto car reversed its position on the road and came to a stop, or near stop, in front of defendant's oncoming car under such circumstances and within too short distance for him to avert running into it.

Defendant, of course, denies each and every act of negligence alleged against him, and avers that he was driving his car, whose cargo then, besides himself, was a nephew, 16 years of age, a nurse and three small children, besides Josephine Lococo, in a prudent and cautious manner and within the requirements of law and the rules of the road. He avers that without warning the De Soto car, coming toward him at an excessive speed, suddenly turned from its side of the highway directly into the path of his car, then being prudently driven, and stopped so near him that the collision was unavoidable.

The demands of plaintiff were rejected by the lower court and he has appealed.

The De Soto car was traveling between 50 and 60 miles per hour. Higginbotham frankly admits he has an interest in the outcome of the suit. He testified that, when a short distance north of the intersection, he observed a saddled horse grazing on the shoulder of the road on his right side; that the horse started leisurely across the road and he removed his foot from the accelerator when 75 or 100 feet away and applied the brakes suddenly and forcefully when 50 feet from him; that the brakes must have locked, as the car suddenly veered to its left, made a "U" turn, remained on the pavement, and was finally righted near the center of the 36-foot pavement, facing north, the direction from which he had come; that when the car had stopped or was practically still, defendant ran into it at full speed from the rear. If the horse had been where Higginbotham said it was and had acted as he claims, there is no reason whatever for defendant not to have seen it, and, this being true, the duty devolved upon him to reduce his speed and prepare to meet or obviate any emergency which might be reasonably anticipated from the existing conditions and circumstances. Defendant and his nephew, Santo Cuchinatto, who appeared as a witness for plaintiff, both are positive there was no horse about the intersection and that none played a part in the collision. The colored nurse corroborates their testimony on this point. They say that the De Soto car was observed by them a mile up the road, traveling very fast; that as it neared the upper leg of the "Y" of the road leading off toward New Roads, it zigzagged, indicating to them that it intended to turn into this leg, but swung back toward the center of the highway, and when near the lower leg of the "Y," that nearest them, it made the sudden turn above described, with the consequences herein related. If we eliminate the horse as a contributory factor in the accident, the facts and circumstances tend to confirm defendant's belief that Higgin-

botham was endeavoring to take the road toward New Roads, for no other reason appears, even remotely, for the De Soto car to act as it did.

Higginbotham says that, when he applied his brakes, defendant's car, a large Buick, was 300 feet below the horse. At this point, the concrete is 36 feet wide and a 6-foot level dirt shoulder is on either side, yet he would have us believe that, regardless of the emergent conditions prevailing there and then, defendant, an old man, responsible for the safe conduct of a carload of children, made no effort whatsoever to avert any contingency that would be reasonably expected to arise out of said conditions, but, on the contrary, continued to drive with unabated speed until stopped by the De Soto. When asked why he did not try to pass in front of the horse which he says was moving leisurely toward new grazing fields, he answered that he suddenly decided the best thing to do was to run squarely into the animal. He says he missed it, but as soon as his car stopped, began to look around to see "what happened to the horse," and this too, regardless of his knowledge that defendant's car was rapidly approaching on his side of the road and regardless of the fact that he knew the horse had not been struck. This testimony does not have the proper ring to it. It seems unreasonable and entirely out of harmony with what we think should have happened and what Higginbotham would have done under the circumstances. He was only 50 feet from the horse. He had nearly 40 feet clearance to pass to the left of the horse and ample room to pass to its rear, yet he decided to run into it. Why so solicitous for the horse's welfare, his first thought, after regaining complete control of the car? Why should not his first thought have been to avert the collision with defendant's car? The answers to these queries do not appear in the record. We are left to conjecture.

■ We reach the conclusion that the testimony definitely establishes there was no horse about the scene of the accident and that the accident, from defendant's standpoint, was unavoidable.

■ In a case of this character, the decision of the trial judge is entitled to unusual weight, and properly so. We think he correctly passed on the case.

Judgment affirmed with costs.