These consolidated appeals come before us from a judgment rendered in each of the two cases which were consolidated for trial in the court below as both demands arose out of the same automobile accident. In the first suit the plaintiffs are Anthony Pendola, owner and driver of one of the cars involved in the accident, Mr. Mrs. J.B. Cascio, father and mother of the minor child, Celia Mae Cascio, and for whose use and benefit they appear, and Lula Johnson, a colored girl nurse. In the other suit the plaintiff is Ignatius Lococo who sues for the use and benefit of his minor daughter, Josephine Lococo. Josephine Lococo, Celia Mae Cascio and Lula Johnson were all passengers in the Pendola car in which they were travelling with him from Baton Rouge to Monroe, Louisiana. A young man named Santa Cuchinnatto was also in the car with them but is not a party to any of this litigation.
The Pendola car left Baton Rouge at about 8 o'clock of the morning of July 12, 1934, crossed the Mississippi River at the Port Allen ferry and was proceeding west on its journey along highway No. 71 in the direction towards Alexandria, Louisiana. When it reached a point in the vicinity of the "Y" formed by the intersection of the highway leading to New Roads with Highway No. 71, it collided with an automobile belonging to the Louisiana Highway Commission and being driven by one of its employees, J. Monroe Higginbotham, in an easterly direction towards Baton Rouge. Issue was raised by the pleadings concerning the nature of Higginbotham's mission at the time of the accident but the proof was, and it now seems to be conceded, that he was engaged in the course and scope of his employment and therefore the doctrine of respondeat superior should prevail in the event the negligence he is charged with is shown to have been the cause of the accident.
The allegations of the plaintiffs in both suits regarding the manner in which the collision occurred are substantially the same. In effect, they are that the Pendola car was proceeding on its right hand side of the paved portion of the highway at a speed not in excess of forty miles per hour when the driver noticed the other car approaching *West Page 30 
from the opposite direction at a high rate of speed and going first to one side of the road and then to the other. That the driver of the Pendola car reduced its speed, expecting the other car to go over to its right side of the highway. Finally it did pull over on that side and, Pendola, believing as he had a right to, that it would remain in its lane of travel, accelerated the speed of his car to pass by it but all of a sudden the driver did something which caused his car to turn almost completely in the path of the Pendola car and although Mr. Pendola quickly applied his brakes and kept well on his side of the road, he was unable to avoid running into the other car with the resulting damage and injuries complained of in both suits. Negligence is charged against Higginbotham for the reckless and careless manner in which he operated the car he was driving and for which his employer, the Louisiana Highway Commission, is sought to be held in damages.
The various amounts of damages claimed in the first suit are as follows: Anthony Pendola, $14,242.22, including those for personal injuries consisting of a fracture of the patella of the right leg, two broken ribs, lacerations of the lip and gums, loosening of three front teeth, as well as doctors and medical expenses and damages to his automobile. Celia Mae Cascio, $2,000 for physical pain and injuries which consisted of a fracture of the nose, maceration of the inferior turbinate and laceration of the upper lip. Lula Johnson, $1,000 for personal injuries which consisted of severe laceration of the right knee and contusions of the leg and neck. In the second suit the damages claimed are those alleged to have been sustained by Josephine Lococo, minor daughter of the plaintiff, consisting of a severe laceration on the right side of the face with a resulting ugly scar and three broken teeth in the front of her mouth also causing serious disfigurement. The demand is for $11,000.
The defense in both cases is the same and practically a denial of the negligence charged against the driver of the highway commission car and a consequent denial of liability. As previously indicated the answer in each case also contained a denial that the driver, was, at the time, acting in the course and scope of his employment but that issue appears to have now passed out of the cases.
After trial in the district court there was judgment in favor of the plaintiffs in each suit as follows: Anthony Pendola, $6,327.22, Mr. Mrs. J.B. Cascio for the use and benefit of their minor child, $1,000, Lula Johnson, $750 and Ignatius Lococo, for the use and benefit of his minor daughter, $4,000. An appeal has been taken in each case and an answer has been filed on behalf of each plaintiff, asking for an increase in the amount of each award.
Highway No. 71, running east and west, is straight for a distance of at least a half mile in each direction from the point where the accident took place. The paved portion measures 20 feet in width but at the "Y" forming the junction with the highway leading to New Roads it widens into a four lane highway, the concrete strip there measuring 41 feet in width. The dirt shoulder on the south side is 4 ft. 6 in. wide and the one on the north, 24 ft. 6 in.
The preponderance of the testimony shows that Mr. Pendola was driving his Buick sedan at about 50 miles per hour at the time he observed the Highway Commission car, a DeSoto sedan, approaching the "Y" at a rapid rate of speed. Higginbotham admits that he was going between 50 and 60 miles an hour. According to the witnesses who occupied the Pendola car it appeared to them from the manner in which the DeSoto car was zigzagging that the driver probably intended to turn north into the New Roads highway, but evidently he did not as he continued on his way east. Mr. Pendola, noticing this retarded his speed and then the DeSoto got into its right lane of travel. Mr. Pendola then accelerated his speed in order to pass it but as both cars approached the eastern end of the "Y", the DeSoto made a complete "U" turn in front of the Buick. The action of the driver was so sudden that Mr. Pendola had no time to stop or avoid running into the rear of the DeSoto car and the force of the blow pushed it from 30 to 50 feet in front of his car.
Mr. Higginbotham's was the only testimony produced on behalf of the defendant. He accounts for his action in applying his brakes which caused his car to suddenly make a "U" turn in the highway directly in the path of the oncoming Pendola car by stating that a horse was grazing on the south shoulder of the road at a point which he estimates to have been 50 feet from the east end of the "Y" and as he approached it he observed that the horse had started to move toward the pavement so he slowed down the speed of his car but did not apply *West Page 31 
his brakes until he was 50 feet away from it at which time half of its body was on the pavement. The application of the brakes caused the automobile to swerve and skid. His explanation of having missed striking the horse is that the noise made by the skidding of the car must have frightened it and caused it to turn back on the shoulder. The car did not stop swerving and skidding until it had made a complete turn in the highway and within a "split second", as he expressed it, had been struck from the rear by the Buick sedan.
The horse, according to Mr. Higginbotham, was saddled but had no bridle on. He assumed that it belonged to one of the men who he says was either fishing or cutting grass across the road. For him to have assumed such a thing necessarily implies that there were some men on the road near the scene of the accident and yet no such person or persons seem to have been attracted by the commotion created as no one came to see what had happened. This, to say the least, appears a bit unusual and unnatural and tends to weaken the statement of Mr. Higginbotham about the presence of the horse, a fact which is not otherwise supported by proof and which is denied by other witnesses. In this connection it may be pertinent to state that a phase of these cases appeared in the district court of Catahoula Parish in a suit brought for damages on behalf of the minor, Josephine Lococo, against Anthony Pendola, as a guest in his car. Her demand was rejected in that Court and an appeal taken to the Court of Appeal for the Second Circuit. The Court of Appeal had practically the same testimony before it as is now presented to this court and it reached the conclusion that "there was no horse about the scene of the accident and that the accident, from defendant's [Pendola's] standpoint, was unavoidable." See Lococo v. Pendola, 171 So. 125, 127.
The district judge, in the trial of the present cases, expressed doubt as to the presence of the horse on the highway but he was of the opinion that even assuming that there was a horse, under the circumstances as related by Mr. Higginbotham he failed to take proper precaution in time as he had first observed it approaching the pavement as though to cross over it when he was 150 feet away from it but waited until he was only 50 feet before applying his brakes and then too at a moment when he was still going at a high rate of speed. We are left with even more serious doubt than was the district judge concerning the presence of the horse and are inclined to concur in the conclusion reached by our brethren of the Court of Appeal for the Second Circuit in the case cited that "there was no horse about the scene of the accident". We agree with the learned trial judge however that if it be conceded that there was a horse there, Higginbotham's failure to bring his car under proper control at the time he first saw it and apprehended its movements and in then suddenly applying his brakes causing his car to turn completely around in the path of the Pendola car was the real and sole cause of the accident.
The rule of sudden emergency is invoked on behalf of the driver of the Highway Commission car but we see no ground on which it can be applied under the facts in these cases. If any emergency arose at all it was one created by the driver's failure to properly act in time in controlling his car. The rule will not be applied to favor one who himself had a part in bringing about the situation of the sudden emergency. Dill v. Colley, 3 La.App. 305; Gaubert v. Ed. E. Hebert Co., Inc., La.App., 174 So. 716.
We are in thorough accord with the findings of the trial judge on the question of liability by the defendant in each case but are of the opinion that reductions should be made in some of the awards.
The judgment in favor of Anthony Pendola included the sum of $607.22 for items which apparently are not disputed. These were the doctors and hospital bills amounting to $351.75 and $255.47 for the damage to his automobile. It included also an item of $720 for extra clerk hire he claims to have been obliged to obtain in his store at Columbia, Louisiana, for twelve months at $60 per month, by reason of his disability during that period. The testimony is that Mr. Pendola resided at Monroe and that this store was located in Columbia, some thirty-five miles away. In reality the store was operated by his son-in-law and daughter and by his own admission they did so efficiently. They worked four clerks regularly. Our appreciation of his testimony is that he seemed to have acted more or less in a supervisory capacity, his presence there not being required regularly. Why it was necessary for him to have hired an extra person to clerk in the store at $60 per month has not been satisfactorily shown. We do not *West Page 32 
think that his claim for loss sustained on this item has been supported by sufficient proof and it will be eliminated from the total amount of his award.
The physical injuries suffered by Mr. Pendola were of a rather severe nature and he sustained as a result of the fracture of the patella an impairment of 15 to 20%. That fracture was his most serious injury and the one for which he is entitled to substantial damages. He had two broken ribs and three of his front teeth were loosened. He was hospitalized and then confined to his bed at home for a period of nine weeks and was unable to walk on his injured leg for six months. In addition to this he had severe lacerations and contusions about the body and no doubt suffered considerably. We do not believe that the award of $5,000 for all his physical injuries, pain and suffering, with the disability to his leg in his knee, is excessive and it will remain at that figure. The total amount of his award of $6,327.22 will accordingly be reduced by the sum of $720.
The award of $1,000 made to Mr. Mrs. J.B. Cascio for the use and benefit of the minor child, Celia Mae Cascio, strikes us as being somewhat excessive. The trial judge found that she had sustained a fracture of the nose and laceration of the upper lip from all of which, according to the doctor who treated her, she was cleared in about six weeks. At the time of the trial there was a slight deformity at the bridge of the nose and a very small scar in front of the upper lip. These, the district judge found, were not very noticeable. We think that the award in her case can justifiably be reduced to $750 and the judgment will again be amended to that extent.
The award of $750 made to Lula Johnson who sustained severe lacerations of the right knee and bad bruises and also a severe contusion of the neck and shoulder region all of which kept her from resuming her duties as nurse for six weeks, is not excessive and will be allowed to stand.
In the Lococo case, the evidence discloses that Miss Josephine Lococo lost a front tooth which had to be replaced by a false tooth with a plate. Two teeth were broken and this causes a disfigurement to her mouth. She also received a severe laceration running along the base of her nose. In healing she was left with an ugly scar which apparently will remain permanently. She had considerable trouble as a result of the injury to her teeth and remained for a long time under the care and treatment of a dentist. Undoubtedly she suffered very much pain and the scar with which she was left disfigures her. The trial judge thought that her claim for damages was considerably exaggerated but he nevertheless awarded her the sum of $4,000. Whilst we consider the award a bit liberal we are not inclined to disturb it as it seems to be in line with others that are usually made in cases of this nature.
A separate decree will be entered in each case, the one that follows to be the decree in the case of Anthony Pendola et al. v. Louisiana Highway Commission:
It is for the reasons herein stated now ordered, adjudged and decreed that the judgment in that case be and the same is hereby amended by reducing the amount of the award made in favor of Anthony Pendola from the sum of $6,327.22 to the sum of $5,607.22, and by reducing the amount of the award in favor of Mr. Mrs. J.B. Cascio for the use and benefit of their minor child, Celia Mae Cascio, from the sum of $1,000 to the sum of $750, and as thus amended that it be affirmed, the costs of this appeal to be paid by the plaintiffs, appellees herein.