Statement of Facts.
NICHOLLS, J.
The plaintiff seeks to recover from the defendant $10,000- as damages for personal injuries alleged to have been received by him from being struck and injured by an electric car which was negligently operated by its employes. He alleges: That on October 18, 1907, at about 6:15 o’clock p. m., petitioner was a passenger in Clio car No.-owned by and operated by the defendant herein. That said car was going down Freret street,, in the direction of Upperline street, where said car stopped in order to permit your petitioner to alight. That immediately after leaving said ■car, and while he was still on the track of the defendant herein or about to cross the ■said track, in order to reach his home, he was violently run into and knocked down by Clio car No. 66 going up Freret street on the track parallel to that on which petitioner had just left the car in which he had travel•ed. That said car No. 66 was going up Freret street on the track located on the wood ■side of the street. That said car was running at an excessive and unlawful rate of speed, and failed to slow up or stop at the said corner of Clio and Upperline streets, when the other car, in which petitioner was a passenger, stopped at said corner, all of which was in flagrant violation of the ordinance of the city of New Orleans regulating such matters, and that said car No. 06 not only failed to stop as required by the said city ordinances, but kept on its way uptown at the said unlawful rate of speed and passed the car, which had stopped without sounding any bells or giving any signal of its approach, all of which was also in violation of the city ordinances regulating such matters.
That while he was still on the defendant’s tracks, and before he had reached a place of safety, and was therefore a passenger in charge of defendant herein, he was unlawfully thrown down and seriously and painfully hurt by said car No. 66, as above set forth. That he was thrown violently forward for several feet and struck the ground with a great deal of violence. That, in consequence of said blow and of said fall, he sustained intense bodily bruises and contusions, and very serious internal injuries. That he was rendered unconscious for nearly four hours. That he was confined to his bed for several weeks, suffering from contusions and bruises to the left shoulder and to the back, involving a serious shock to the spinal column and to the nervous system, all of which has subjected petitioner to intense mental and physical pain and suffering,, and all of which has permanently affected petitioner’s health, and permanently incapacitated him, and reduced his ability to make a living for himself and family.
That for the great mental and physical pain suffered by him he claims the sum of $4,000, for the permanent injury to his health and bodily injuries, disabilities, and disfigurement, loss of vitality, and impairment of health, etc., he claims the further sum of $4,000, for the loss of time and wages which he has suffered since said accident he claims the sum of $1,000, and, as punitive or exemplary damages for the gross carelessness and criminal defiance of the *1063 law exhibited by the defendant herein, he claims the further sum of $1,000, making a total of $10,000 herein claimed. That said accident was caused entirely by the gross fault and criminal recklessness and violation of law of the defendant herein as above set forth, and that petitioner in no way contributed to his injuries.
In view of the premises, petitioner prayed for citation; that there be judgment in favor of petitioner and against defendant herein in the full sum of $10,000, with legal interest from date thereof, and for all costs of suit and of legal, general, and equitable relief.
Defendant answered, pleading, first, a general denial. It admitted that plaintiff was injured on or about the time specified by being struck and knocked down by ear No. 66 of respondent’s Clio line; that neither it nor its employés were in any manner guilty of negligence in the conduct of said car on the occasion in question, averring the fact to have been that the car was under proper control and was well and carefully managed. Further answering, respondent averred that, plaintiff alighted safely from the car descending Freret street, and, passing safely behind the said car which concealed him from the motorman of car No. 66, passed suddenly and rapidly across the street, and directly in front of the said car No. 66, in such manner and under such circumstances as rendered it impossible for the said motorman to perceive him in time to stop his car and avert the collision which ensued; that the gong of said ear No. 66 was rung loudly, and could not fail to have been noted by the plaintiff were it not for the fact that he was preoccupied and thinking of other matters, and that he attempted to cross the said street without taking any precaution whatever to ascertain whether other ears were approaching without looking or listening or heeding the warning given, and that the injury sustained by him was the result of hi» own want of care and negligence.
In view of the premises, respondent prayed that plaintiff’s demand be rejected; that he be condemned to pay the costs thereof, and for all general and equitable relief.
The issues were tried before a jury, which returned a verdict in favor of the plaintiff' for $500.
Defendant’s application for a new trial was overruled, and judgment in conformity with the verdict was rendered. Defendant has appealed.
Opinion.
The defendant company has two parallel tracks on Freret street. The track to the right, or what is known as the “river” track, is used by the cars going down towards Canal street, while the track to the left, or the “wood side” track, is used by the cars going up towards Carrollton. The cars operating on Freret street belong to the Clio line of the defendant.
In order to guard against the dangers to passengers alighting from a car upon one track, and intending to cross the street over the other track from behind the car from which they have alighted, the city council of New Orleans adopted in August, 1896, the following ordinance:
“An Ordinance to Avoid Danger to Life and Limbs to Our Citizens from Electric Street Cars.
“Be it resolved, that where there are two-tracks on any and all streets, the electric car coming in the opposite direction of the electric car that has stopped to permit a passenger or passengers to get on or off the electric car, the electric car coming must stop when within 30’ feet of the stopped car long enough to permit the passenger or passengers who alight from the electric car to cross the tracks if the passenger so desires.
“Be it further resolved that any violation of this ordinance by any of the motormen or conductors of said electric cars shall be punished by a fine or imprisonment or both not to exceed twenty five dollars or 30 days.
“Be it further resolved that on or after the date of the passage of this ordinance the electric street car lines at present and those that *1065 •may be added in the city of New Orleans will ’be compelled to observe the foregoing ordinance as to the protection of the lives and limbs of onr -citizens.”
The testimony shows that the injury to the -plaintiff in this case was due to the nonob-servance by the motorman of the upgoing ■car on Freret street when he had alighted from the car on the other track and was •crossing Freret street from the rear of the .one from which he had just stepped. It is •claimed by defendant that that car had not ■ come to a “dead stop,” and therefore the upgoing car was not called upon itself to •stop. That reason is insufficient. The motorman testifies to the fact that he saw the -car going down, “slowing up” to permit a passenger to get out, and he should have 'brought his own car to a stop in order to carry out the objects and purposes of the ordinance. The danger to the passenger who was getting out from the passing of the up-going car was precisely the same whether the car from which he had alighted had come to a “dead stop” or not. His duty was to conform to the ordinance not to reason about it. He had no discretion in the premises. It is •the duty of the court to see that that ordinance which was enacted under the police •power for the public safety should be rigidly ■enforced in aid of the remedy for the mischief sought to be guarded against.
There is some question as to the particular place at which the plaintiff was struck. It is claimed by the defendant that, when injured, he was not “on the lower crossing” •of “Upperline” street, but near the “upper crossing” of that street. It was not nec- • essary for the protection of the plaintiff that he should have alighted exactly at the lower .crossing. The car frequently when stopping for a passenger to get out stops a few feet • short or a few feet beyond the crossing. The passenger gets out where in fact it stops. •The important point is: “Was he struck by •¿the passing car just after he had alighted from the car on the other track and before he had time to cross the track?” He was, under the ordinance, entitled to have had time given him to do so, and that time was not given him in this instance. It is urged that plaintiff was guilty of contributory negligence; that before he crossed the street he should have looked to see whether or not there was a ear approaching on the other track. The very object of the ordinance was to protect the citizen from the consequences of his own forgetfulness or imprudence in that respect. The ordinance in question was not enacted in the interest of any particular person, but in that of the general public, known to be not as careful as the danger of the situation would require. It is claimed that plaintiff saw the car approaching, and deliberately took the chances of his being able to cross the track before it would reach that point. That fact is negatived by defendant’s pleadings as well as by the testimony. The motorman testified that “he was going up Freret street when he noticed this down-bound car slow up, and it (that car) was going to stop to discharge a passenger. He threw his power off and put his brake on expecting the other car to stop. It did not stop. He met it just about 50 feet from the lower side of Upperline street, and he looked at that corner and saw this man standing on the downtown track, and he released his brake, rang his bell violently to attract his attention, and he saw he would not go over, and just as he got about eight feet from the lower line of Upperline street, the man suddenly started over and he hit him. As the car (the down-bound car) met his car, he saw him standing at the corner. The man hesitated on the track. He thought he saw him coming. Witness could do nothing to stop the ear. It happened too quick. The man was too close when he started over his track. Witness “did not have time to put the brakes on but tried to do so.”
*1067 On cross-examination he said his ear was going pretty fast when it reached that corner. The speed was on, but not the power. 1-Ie had the car that time under control if the down car had stopped. He did not bring his car to a stop. When the two cars met, the down ear was clear of the corner about 40 feet from it. He thought it was letting witness’ car go by.
Defendant in its answer alleges that:
“Plaintiff alighted safely from the ear descending Freret street, and, passing safely behind the said car which concealed him from the motorman of car No. 66 (the upper bound car), passed suddenly and rapidly across the street, and directly in front of said car in such manner and under such circumstances as made it impossible for the said motorman to perceive him in time to stop his car and avert the collision.”
The jury decided the facts at issue in favor of the plaintiff, and the court affirmed its verdict. We see no reason to reverse the judgment on the facts. The judgment is affirmed.