EDWIN P. CUNDIFF,
 Appellant

 vs

SAM IMBRIGULIA

No. 8297

June 19th, 1922.

Court of Appeal
Parish of Orleans
FILED June 19-22
J. J. Stansbury

EDWIN P. CUNDIFF,
 Appellant

vs No. 8297

SAM IMBRIGULIA

CHARLES F. CLAIBORNE, JUDGE.

This is a damage suit, resulting from a collision between a truck and an automobile.

The accident happened on the river side of a triangular portion of ground occupied by the *French* fruit market, and covered with buildings and stands. bounded at the base by St. Philip Street, on the Lake side by Decatur Street, and on the River side by Peters Street. At the apex of the triangle, Decatur Street and Peters Street merge into each other and leave an open space. A short distance above the apex, towards Canal Street, Dumaine Street runs into Decatur or Peters Street. Along the River side of the triangle, in the center of Peters Street, there are two street railroad car tracks. The rail of the track nearest the Lake is twenty feet from the curbing or banquette of the market and the street is fifty feet wide. The time was about 11:15 of a Sunday in the month of May; the weather was rainy.

A recital of the testimony of the several witnesses for the plaintiff and for the defendant would serve no useful purpose; it is sufficient for us to state the facts as we find them, and such as they are practically admitted by both sides.

The defendant was the owner of a heavy truck; he employed a chauffeur to drive it. This chauffeur was driving the truck up Decatur Street, and when he got to the extremity of this triangle he turned to his left and proceeded to cross Peters Street with a view of turning to his left towards Esplanade Avenue. The front wheels of his truck had reached the first track towards the

608

lake, when plaintiff's car struck the front of his truck hitting the bumper and the front wheel. The driver of the truck did not stop before attempting to cross the tracks; nor did the collision cause it to stop; the truck continued until it struck the curb on the other side of the street. When the impact occurred the driver says he was knocked off of his truck, and fell on the left side of the truck, although he was driving on the right; but two witnesses say he jumped off of the truck on the right. The plaintiff says that neither he nor the lady in his car with him was shaken or received a scratch. Defendant's driver says he

"blew his horn";

three witnesses swear they did not hear it.

The evidence is that plaintiff was driving up Peters Street in his automobile on the right side of the street over the tracks of the street cars going uptown; that when he reached near the point where Decatur and Peters Street meet, the truck swung around the point and struck his right fender. One of plaintiff's witnesses, utterly disinterested, thus states it:

"Imbrigulia's truck turned around there at the point of the market and ran right into his automobile".

Another witness for plaintiff says:

"I gave the man my card and told him if he needed a witness to call on me".

Both the truck and the car were damaged. Plaintiff claims $1200 and defendant prays in reconvention $209.75.

There was judgment rejecting both demands. The plaintiff has appealed, and defendant joins in the appeal.

This evidence satisfies us that the defendant's truck was carelessly thrown in the way of plaintiff's car, and was the immediate cause of the accident. In doing so the driver violated all laws of prudence. He must have known that in crossing that much frequented thoroughfare and two car tracks he would more than probably be in the way in some vehicle going uptown. It was raining

and many curtains of the market stands along and fronting Peters Street, and more especially of the stands near the apex of the triangle, were down and obstructed the view between Decatur and Peters Streets. Besides he flagrantly violated two Sections of the City traffic ordinances which commanded him to come to a full stop, to look, and listen, on approaching car tracks with a view of crossing them.

Section 8 of Article I of Ordinance 5181 adopted August 6th, 1918 ordains:

"Right of Way: "Vehicles traveling on the following streets have the right of way over vehicles approaching on intersecting streets namely: St. Charles Street &c x x x, and also all other streets with street car tracks. Vehicles approaching above streets and avenues from intersecting streets shall, before crossing or turning into same, come to a full stop".

There is no pretense that defendant's driver came to a stop. If he had looked he could not have helped seeing the car which was in such close proximity to him.

But defendant contends that this ordinance does not apply because Decatur Street is not an

"intersecting street".

The letter and spirit of the law is that vehicles traveling on streets upon which there are car tracks, shall have the right of way, and that this right of way shall prevail over those attempting to cross them, *and that the latter shall stop before crossing them.* — There was a time, not suspicious, when defendant's counsel agreed with us. For in the answer filed in this case, sworn to by him, he says:

"Your respondent's truck was slowly crossing the uptown track on North Peters Street at the intersection of said street with Decatur Street, going in the direction of the River &c".

610

But if we are wrong in our interpretation of this section, then another section of this same ordinance condemns the defendant. Section 3 of Article II provides as follows:

"3- Intersections and crossings - No motor vehicle shall turn into or cross any right of way street, as fixed in Article One, Section 8, without first coming to a full stop &c".

The defendant also argues that the requirement as to stopping applies only to the particular streets and avenues specifically named in the ordinance, and does not affect

"all other streets with street car tracks".

We cannot agree with counsel, as the reason of the rule is the same.

Counsel again agrues that the ordinance does not apply for the further reason that the failure of the driver of the truck to stop was not the proximate cause of the accident. We think, on the contrary, that the failure of the driver to stop was in the very teeth of the law and defeated its plain purposes, which were evidently to give the driver of the crossing motor a deliberate opportunity of seeing an auto running on the right of way street, and to afford the car on the right of way street an equal opportunity. We are convinced that if the truck had stopped when it reached the line of Peters Street, or within ten feet of the railroad car track, that it would have seen or heard the car coming up Peters Street. Defendant's witnesses swear they could see down to Ursulines Street a distance of more than a block, and that plaintiff's car was making as much noise as an aeroplane.

Of course, defendant's negligence and violation of a City Ordinance would not alone justify a judgment against him, if the plaintiff himself had been guilty of negligence, or if by the exercise of due care, he could have avoided the collision.

The defendant's only charge of negligence against the plaintiff is that he was speeding. Two witnesses testify to that: Rosie Grasso and B. Mutti. Both of those witnesses were on the banquet

of the fruit stand. In front of Mrs. Grasso the curtains were down and only a small opening was left to allow people to pass. E. Mutti says that there were no curtains in front of his stand. But there were in front of other stands. His testimony is fraught with exaggeration. He testifies that from his position, he could see down to Ursulines Street, which is the second street beyond the market; that the plaintiff's car was running at the rate of 40 or 50 miles an hour, and that, in running past him, it splashed the the water all over the sidewalk which was 20 feet distant from the rail. On the other hand the plaintiff and one of his witnesses swear that the plaintiff

"was going at a moderate rate".

We cannot conclude from this conflict that plaintiff's speed was in violation of the law or of reason.

This case is in line with several decisions rendered by us wherein we said that drivers of automobiles who by their violation of traffic ordinances bring about a collision must pay for the damage. See Joseph vs Orleans Ice Co. No. 8232 and Maxwell rs N. O. Ry. & Lt. Co. No. 8595; Boston Ins. Co. vs Moody No. 7891; Frey vs Cocino No. 819b. *L. R. A. - 1915 (I) 1021*

In the case of Jones vs N. O. Ry. & Lt. Co. 123 La. 1060, the Court said:

"His (the motorman's) duty was to conform to the ordinance not to reason about it. He had no discretion in the premises. It is the duty of the Court to see that an ordinance which was enacted under the police power for the public safety should be rigidly enforced in aid of the remedy for the mischief sought to be guarded against".

We may add that it is public policy that such ordinances should be enforced in order that chauffeurs of automobiles, such dangerous instruments in the hands of the unskilled and imprudent, should be taught to exercise great care and caution, and thus that the pro-

perty and the life of the citizen should be protected.

The only question that remains for solution is the amount
of the damage.

The plaintiff testifies that the materials would cost the
sum of $ 583.88
a witness testifies that the labor of
replacing these parts would amount to 245.00
Making a total of $ 828.88

*There is no evidence to the contrary*

It is therefore ordered that the judgment herein be re-
versed and set aside, and it is now ordered that there be judgment
in favor of plaintiff Edward P. Cundiff and against the defendant
Sam Imbrigulia for the sum of Eight hundred and twenty-eight 88/100
dollars with five per cent per annum interest from October 18th,
1920 till paid and all costs of suit, and that defendant's recon-
ventioned demand be rejected at his costs.

Judgment reversed.
June 19th, 1922.