MATHES v. SCHWING ET AL.

———

(January 21, 1929. Opinion and Decree.)
(February 25, 1929. Rehearing Granted.)
(April 29, 1929. Opinion and Decree on Rehearing.)

———

Eugene Saunders and Irving R. Saal, of New Orleans, attorneys for plaintiff, appellee.

J. C. Henriques and Frank T. Doyle, of New Orleans, attorneys for defendants, appellants.

## STATEMENT OF THE CASE

GLEASON, J. ad hoc. The plaintiff herein, father of the minor child, aged about 16 years, sues defendants to recover $25,000 for the benefit of the said minor, and the sum of $10,451 for the benefit of himself, as a result of injuries received by the said minor while alighting from the rear end of a Prytania street car and attempting to cross around the rear thereof to the opposite side of the street. The car was at the time stopped at the near corner of Prytania street and Napoleon avenue and was proceeding in a downtown direction. It is charged that the defendants, one the owner and the other the operator and agent of the owner, were operating the car at an illegal and excessive rate of speed, and that they violated the traffic ordinances of the city of New Orleans by passing a car when stopped for the purpose of taking on and letting off passengers, and that the said acts were the proximate cause of the injury.

The defense is that the defendants were not guilty of negligence, were not proceeding at an excessive speed; that if the ordinance was violated in so far as passing the street car when stopped is concerned, that the said violation was not the proxi-

mate cause of the accident; and, in the alternative, that the plaintiff had himself violated the traffic ordinance of the city of New Orleans, was guilty of contributory negligence, and could not recover.

The case was tried by a jury and there was judgment for plaintiff, for the use of his minor child, in the sum of $5,000 and in the sum of $3,500 for himself, with legal interest from judicial demand. From this judgment defendants appeal.

## OPINION

In so far as the plaintiff seeks to recover on the basis of negligence growing out of the rate of speed at which the automobile was traveling, it is our conclusion that the plaintiff has failed utterly in his proof. The car seems to have been going at a speed of approximately 15 miles an hour, and the distance within which the car was stopped satisfies us that the speed was not at all excessive.

The right of the plaintiff to recover, therefore, resolves itself into a question as to whether or not there was a violation of the city ordinance by the defendants in passing a car while stopped, and, if so, whether this violation was a proximate cause of the injury, and, if the foregoing be true, whether the plaintiff himself was not guilty of contributory negligence such as to preclude recovery.

The evidence shows that the minor injured was a passenger on the Prytania street car; that he had procured a transfer to the Napoleon avenue car, and that he alighted from the Prytania car from the rear end thereof at a time when the Prytania car had stopped on its downtown passage to permit the alighting of passengers as it reached Napoleon avenue.

The evidence is not precise as to wheth-er the front of the car stopped exactly at the spot at which it is usual to stop, that is, as the front of the car reaches the property line of the intersecting street, leaving the sidewalk continuation clear for traffic, but we do not deem it of any great importance whether the car stopped exactly at that spot or a few feet beyond or a few feet short. The important fact is that the rear of the car was at least the distance of the car from the front, and, as the cars are over 40 feet in length, this would, under any circumstances, place the plaintiff, when he alighted from the car, considerably on the uptown side of the intersection of Prytania and Napoleon avenue, or way beyond the place where it is usual for pedestrians to cross.

The automobile of defendants was bound uptown. There was some confusion in the testimony as to whether the street car was actually stopped or had begun to move at the time that the defendant's car passed the intersection of Prytania and Napoleon avenue at the place where pedestrians ordinarily cross. We do not think it makes any difference whether the street car was at a complete stop or had begun to move, because, under the plain terms of subsection "E," paragraph 10, article 1, section 1, of the traffic ordinance, it is provided:

"No vehicle shall pass a street car while same is stopped or about to stop to take on or let off passengers, except on the following streets," etc.

This can mean only one thing, in our view, and that is that the purpose of requiring the vehicle to stop is, as stated in the ordinance, to permit the taking on and letting off of passengers, and this section must be construed with section 4, article 7, which provides: "Pedestrians shall cross streets only at right angles and at street intersections. They shall not cross inter-

sections diagonally"; which to us clearly indicates that it was intended by the restriction in the ordinance prohibiting vehicles from passing the stopped street car to cover the area of the street intersection, because that is the only place that a pedestrian was authorized to pass, and, as the accident occurred at a place comparatively remote from this intersection, the violation of the ordinance as a cause of the accident had ceased entirely to operate.

The violation of a traffic ordinance does not continue as a negligent act ad infinitum. It does not continue to the next block, nor does it continue to the center of the block, nor can it continue to any distance beyond that covered by the mischief sought to be avoided; and clearly, under the terms of the ordinance, the mischief sought to be avoided was the injury to passengers crossing at the street intersection.

Street cars stop either on the near side or far side of streets, depending upon their locality. When they stop on the far side, passengers get off on the rear end, and it is not until the automobile passing it in the opposite direction reaches the rear end that the traffic coming from the car can be seen. As this is the place which the ordinance says the pedestrian should pass, should an oncoming automobile strike a passenger in this location, and, if the passenger were not guilty himself of contributory negligence, the violation of the city ordinance would be one of the proximate causes of the accident. But an entirely different situation prevails where the car stops on the near side of the street, because then the front of the car is the place where the passengers cross the street. In that case, as before stated, the violation ceased to operate when that danger zone had been passed.

The plaintiff and appellee complains that there is no proof as to just where the car stopped. That is true, but the inference from the testimony is very clear that the car stopped about where it usually stopped, and, under any circumstances, the burden of proof was on him to show that he was injured at a place where he had a right to cross the street, and the proof in the record negatives this.

After the injury the minor son of plaintiff admitted to one of the defendants and to Captain Jackson that the injury was not the fault of defendants but his own fault, and plaintiff and appellee urges that this admission should not be construed against him. We grant that the admission, in so far as it admitted legal consequences, can have no effect, and we are not inclined to take literally statements made by a person immediately following an accident and still under the stress of emotions caused by the injury. However, the statements made by the boy at least indicated one thing, and that was that he was conscious of having been precipitate in his action, and this precipitation is the very thing that caused the accident.

The surrounding circumstances would indicate that the boy, who had a transfer, was in a hurry to catch the Napoleon avenue car, and that he rushed hastily from the rear of the car without stopping to look or listen before he crossed the street to the opposite side. He, however, denies this and holds that he stepped out only one step and was then struck by the automobile. Under any view of the case, it is evident that he was precipitate, and, whether he ran or walked fast, he certainly suddenly emerged from behind the car and stepped into the side of the automobile, and it was as a result of this that he was injured.

The appellant construes the ordinance regulating the passing of cars to relate only to automobiles passing the street car from the rear. We are unable to agree with this view, but we do hold that the violation of the ordinance in passing the street car while stopped to take on or leave off passengers is only operative as negligence per se up to and until the operator of the automobile passes the street intersection, and not beyond, and that a person injured in another section of the street must recover not because of that violation of the traffic ordinance, but because of some other and independent act of negligence.

Plaintiff and appellee contends most strenuously that young Mathes had a right, after alighting from the car, to go to either side of the street. This is true only in the respect that he had to first go to the sidewalk to the right of the street car and then walk to the intersection and cross at the intersection, and not behind the car at a point remote from the corner or intersection. Even if at the intersection, he was obligated, if the car was still there, to see that the way was clear before venturing to cross the street.

Paragraph C of section 7, which reads as follows, "When alighting from street cars, pedestrians should be sure the way is clear before crossing behind the car," relates to cars stopped on the far side of the street, where the alighting would be on the line where the ordinance provides that the pedestrian should cross the street, that is, at the street intersection, and even then he is obligated to look before crossing, because this subdivision must be read in conjunction with section 4, which fixes precisely where he should cross.

Counsel for plaintiff and appellee quote the case of Jones v. New Orleans Ry. & Light Co., 123 La. 1060, 49 So. 706, as being decisive of this case. We are unable to see wherein it helps the plaintiff's cause at all. This decision was rendered in 1909, and a decision rendered that long ago stating the proper course of conduct as between pedestrians and vehicles on the streets of a large city may be apposite and correct for the conditions prevailing at that time, but traffic conditions of today are entirely dissimilar to those then prevailing. What would have been a reasonable and measurably safe line of conduct at that time would be indirect suicide today.

In that case, the car had stopped on the far side of the street and the passenger was in the process of crossing to the opposite side of the street. The fact that he was crossing to the opposite side of the street is the only fact in the Jones case that is in consonance with the facts in this case, but in the Jones case, the plaintiff appeared to be at the street intersection, whereas in this case he was removed therefrom.

Additionally, in the Jones case, the defendant was held liable for the violation of a city ordinance which specifically provided that the electric car coming in the opposite direction should stop for the stated purpose in the ordinance of permitting a passenger to get on or off the car, and it was a habit and custom, the court held, of people at that time to thereupon proceed at the street intersection to the opposite side of the street. Such a course of conduct today would be mad on the part of an individual who tried it, and would so interfere with traffic as to be impracticable. The tendency today is to speed up traffic, not to impede it.

Additionally, while the Jones case provided, by the ordinance, for the stoppage of the counter-running car for the purpose of permitting the pedestrian to pass across the street, the present traffic ordinance prohibits the passenger from crossing the street unless he first ascertains whether the road is clear from other traffic, so that the Jones case has no application whatever, as we view it.

The point is also made that the automobile of defendant was too near the car, in violation of that portion of the traffic ordinance which requires the operator of a car to keep as near the right-hand curb as possible, except when passing a car going in the same direction. The defendants say the automobile was in the adjoining street car tracks, as against which the plaintiff contends that, inasmuch as he was struck after making one step, the car must have been closer. We are inclined to accept the statement of the defendants, as they are more likely to be in a position to know where the car was, and, at best, the plaintiff's position in this respect is based upon assumption. Moreover, the provision of the ordinance in this respect is intended for the facility of vehicular traffic passing in both directions, in order to leave as clear a space to the left as possible. To hold otherwise would be to compel the operator of a vehicle to keep his eye on imaginary lines paralleling the street and to tax him with negligence for mere errors in judgment as to distances from curb. This was never intended by the provision of the ordinance.

Inasmuch as we hold that the defendant has not been guilty of primary negligence, the question of contributory negligence becomes of no moment. However, we might say that the action of the minor son of plaintiff exhibits the clearest and most unmistakable violation of the plainest provisions of the city ordinance regulating his duties, and that his failure to observe the ordinance was the proximate cause of the injury.

The judgment of the district court is, therefore, annulled, avoided, and reversed, and it is now ordered that plaintiff's suit be dismissed at his cost in both courts.

## ON REHEARING

JANVIER, J. The facts of this case are fully stated in the original opinion and it is unnecessary to repeat them here.

The rehearing was granted because we desired a fuller discussion of the question of the protection afforded by the traffic ordinance (to-wit, No. 7490 Commission Council series) to a person not on the usual crossing, but emerging from behind a street car, and at a point 40 or 50 feet nearer the center of the square than the usual pedestrian walk-way across the street.

In the original opinion it was held that portion of the ordinance (subsection (e) of article 1 of section 1) which prohibits vehicles from passing street cars, when stopped or about to stop to take on or let off passengers, has no application and affords no protection to a pedestrian elsewhere than at the usual alighting place, or on the usual pedestrian walk-way.

Plaintiff now urges us to hold that the subsection to which we have just referred, instead of affording protection only to such pedestrians as are at the points mentioned by us, creates a danger zone which extends a reasonable distance beyond both ends of the car, and that all persons within this zone may assume that no car will enter and that such persons may rely on

this assumption and need take no precautions whatever for their own safety.

Such a construction would be reasonable if the ordinance contained only those provisions relating to the other vehicles which are prohibited from entering such a danger zone, but it will not do to consider only those portions of the ordinance which are favorable to plaintiff, nor can we look at the ordinance section by section, or piecemeal. It must be interpreted as a whole and we cannot give to one section a meaning which would nullify another. To interpret that section as is contended for by plaintiff would render meaningless paragraph (e) of Section 7, which provides:

"When alighting from street cars, pedestrians should be sure the way is clear before crossing behind the car."

Plaintiff contends that the use of the word "should" in paragraph (e) of section 7 deprives this paragraph of any mandatory effect and makes out of it a mere declaration of a rule of safe conduct. Conceding that there is a distinction between the use of the word "shall" and the use of the word "should"—and it seems to us that some distinction was intended—the fact that such a provision is included in the ordinance evidences an intention of the framers thereof that, even with the inclusion in the ordinance of the prohibition against vehicles entering the danger zone, pedestrians should not be relieved from all duty to exercise care.

It is quite evident that whether paragraph (c) of section 7 is mandatory, or is merely declaratory of a rule of safe conduct, it was grossly violated by young Mathes who, without an instant's hesitation, or even a glance into the direction from which danger was approaching, as was said in the original opinion, "suddenly emerged from behind the car and stepped into the side of the automobile." This court might have said "jumped" into the side of the automobile, because that is what young Mathes testifies he did.

Plaintiff argues that Jones v. N. O. Ry. & Light Co., 123 La. 1060, 49 So. 706, is directly in point here and that under the principles announced therein we would be justified in awarding a judgment to plaintiff.

We do not think so, as we do not think that the Jones case is controlling here, because the ordinance which was invoked in that case did not contain a provision similar to that in the ordinance in question here and which provision requires persons passing around the back of street cars to look out for their own safety. In other words, if the ordinance in question here had merely contained the provision first referred to, to the effect that vehicles should not pass standing street cars, on this feature the Jones case might have been in point, but in the case now before us the ordinance contains not only that provision, but also the further provision that persons passing behind street cars should exercise care.

We think that the case of Shelly v. Waguespack, 156 La. 258, 100 So. 417, is much more nearly in point. In the Shelly case no ordinance was referred to as governing the actions either of the driver of the automobile or of the person crossing the street, and the court held that Mrs. Shelly was negligent in emerging from behind the street car without looking out for her own safety and in going into the path of the approaching automobile. As the court in that case said:

"While a person driving an automobile is required to exercise the greatest caution and prudence when passing street crossings used by pedestrians, a like duty devolves upon a pedestrian."

It seems to us that, although the purpose of the framers of the present traffic ordinance was to require that the automobile driver should not pass a standing street car, yet they did not intend to entirely relieve the pedestrian of the duty of exercising care. It seems, then, that although the defendants were negligent in entering the danger zone—and in passing let us say that we adhere to our former opinion and do not believe that they were operating the car at an excessive rate of speed—such negligence would not authorize us to award damages if young Mathes himself violated either the mandatory or directory provisions of the ordinance, and if this violation contributed proximately to the unfortunate result. It is quite evident that had young Mathes followed the provisions of the ordinance to which we have referred he would have seen the automobile approaching and would not have stepped out from his position of safety.

A most interesting case, involving facts identical with those presented here is found in Day v. Cunningham, 133 Atl. 855.

The only difference as to facts between that case and the case before us is that there there was no statute or ordinance applicable, whereas here the duties of each of the parties were specifically prescribed by ordinance. In that case the court held defendant liable, but said:

"Nor is the defense of contributory negligence established. A pedestrian about to cross a road, or, as in the present case, to walk from a street car to the sidewalk, is not as a matter of law bound to look and listen. Shaw vs. Bolton, 122 Me. 234, 119 A. 801."

With us the contrary is true, for even without the ordinance it is held to be negligence to go into a place of known or obvious danger without looking, although the danger results only from the fact that the other party has violated its obligation to the public. Gibbons v. N. O. Terminal Co., 1 La. App. 371.

It is contended that young Mathes should not be held to the same high degree of care which should be required of a full-grown person, and as authority for this contention plaintiff's attorney cites Shally v. N. O. Public Service, Inc., et al., 1 La. App. 770. The evidence convinces us that young Mathes was a bright, energetic young fellow in the full possession of his faculties, and that it was negligence for him to do what he did do in this case, and that his age and experience were such that his actions can be held to constitute contributory negligence.

Counsel for plaintiff argues most ingeniously that section 4 of the ordinance referred to has no application here because that section prohibits pedestrians from crossing streets except at street intersections, or diagonally, whereas, argues counsel, young Mathes was not crossing the street but was merely going from a point in the street to the sidewalk.

Whether, strictly speaking, Mathes was crossing the street or not is of little importance, because it was plainly the intention of the framers of the ordinance to prohibit pedestrians from being in the street elsewhere than at street intersections, and it seems to us to be splitting hairs to say that a person is not engaged in crossing a street merely because he has

not traversed the entire street from curb to curb. Suppose he had alighted from an automobile instead of from a street car. Could it be argued that he was not in the street in violation of section 4 of the ordinance? We think not.

Furthermore, sub-paragraph (c) of section 7 of the ordinance applies the word "cross" to the very thing young Mathes was doing. This sub-paragraph provides:

"When alighting from street cars, pedestrians should be sure the way is clear before crossing behind the car."

We are therefore of the opinion that, although pedestrians who cross behind street cars at points other than the usual pedestrian walk-way are within the zone protected by the ordinance, they are not, under such circumstances, relieved from the duty of taking ordinary precautions for their own safety.

We realize that the question presented is by no means free from doubt, but we believe that the decisions in Gibbons v. N. O. Terminal Co., supra, and in Shelly v. Waguespack, supra, are authority for the view that, even under the circumstances presented here, persons must exercise some small degree of care.

Were we authorized, under the jurisprudence of Louisiana, to weigh the negligence of the defendants against that of young Mathes, and to award a judgment in accordance with the result shown by the scales, we would have no hesitation in saying that the defendants would suffer as a result of that test, because, in our opinion, their negligence would greatly outweigh that of the young man. However, in this state, in spite of the provision of paragraph 13 of article 3556, Civil Code, the doctrine of comparative negligence is not recognized. Rice v. Crescent City R. Co., 51 La. Ann. 108, 24 So. 791; Belle Alliance Co. v. Texas, etc., R. Co., 125 La. 777, 51 So. 846.

In several cases, notably Legendre v. Consumers Seltzer and Mineral Water Mfg. Co., 147 La. 122, 84 So. 517, the Supreme Court, in discussing situations very similar to that presented here, has held that the negligence of the injured party in stepping into the street in the path of approaching danger, was of sufficient gravity to prevent recovery. Such negligence, then, must have fallen either within the first or the second class set forth in the codal paragraph above referred to. If it fell in the first class and was gross, it would, of course, prevent recovery. Even if it fell in the second class and could be graded as "slight" it would still prevent recovery, and it is only if it could be placed in the third class and graded as very slight that it would, in the language of the code, be excusable and would incur no responsibility.

Being of the view that the negligence of young Mathes, although not so great as that of the defendants, cannot be placed in the third class and graded as very slight, we are forced to the conclusion that it was of sufficient gravity to constitute contributory negligence and thus to prevent recovery.

It is therefore ordered, adjudged, and decreed that the decree originally rendered by this court be and it is reinstated, and accordingly it is now ordered that the judgment of the district court be annulled, avoided, and reversed, and that plaintiff's suit be dismissed at his cost in both courts.