No. 848

First Circuit

McGEHEE v. ASHLEY

(October 7, 1931.  Opinion and Decree.)
(December 8, 1931.  Rehearing Refused.)

A. W. Spiller, of Hammond, attorney for plaintiff, appellant.

Rownd & Warner, of Hammond, attorneys for defendant, appellee.

ELLIOTT, J.  A collision took place between an automobile belonging to Dr. Edward L. McGehee, while being driven by Victor G. Anderson, and one belonging to Louis P. Ashley, while being driven by himself, in which the automobile belonging to McGehee was seriously damaged. This suit is to recover of the defendant Ashley $89.55, the cost of repairing his car, $100 as general damages to his automobile and $50 for loss of the use of his car while it was being repaired, a total of $239.55.

The accident occurred on the night of January 13, 1930, at the intersection of Cypress street and Coleman avenue in the city of Hammond.

The petition of the plaintiff alleges that his automobile was being driven north on

Cypress street at a moderate rate of speed at the time of the collision, and entered its intersection with Coleman avenue in advance of said Ashley, that Ashley was driving at the time at a high and excessive rate of speed, in violation of the laws of the state and of the ordinances of the city of Hammond, and that the accident was caused solely and entirely by the fault, negligence, want of skill and care on the part of the defendant in driving his car.

Defendant in his answer denies the negligence, want of skill and care alleged against him. He admits that a collision took place between his car and that of the plaintiff at the intersection in question, but avers that it was due entirely to the fault and neglect of the driver of plaintiff's car. He alleges that he entered the intersection first and was proceeding across it at a legal rate of speed, when suddenly and without warning he was run into and violently collided with by the automobile belonging to the plaintiff; that the automobile belonging to plaintiff was being operated at the time at a higher rate of speed than was permitted by ordinances of the city of Hammond and in disregard of the regulations of the state highway Commission; that the headlights on plaintiff's car were dim, defective, and ineffective, which prevented him from clearly and safely distinguishing the objects in his pathway and giving a deceptive appearance to said car as to distance to any one viewing same as it approached, and was a proximate cause of the collision; that the accident might readily have been avoided by the driver of plaintiff's car swerving slightly behind the defendant who had almost crossed the intersection, but plaintiff's driver instead swerved his car to—(meaning the right) bringing it against the side of defendant's car; that the driver of plaintiff's car, irrespective of the question of right of way and regulatory traffic ordinances, had the last clear chance to avoid the accident, of which he did not avail himself, but instead drove into the collision. Denying that he was negligent, defendant alleges that plaintiff was negligent, and alleged alternatively, in case it be found that the defendant was negligent, that plaintiff's contributory negligence barred his recovery.

The judge of the city court, assigning reasons therefor in writing, rendered judgment in favor of the plaintiff as prayed for. Defendant has appealed.

It is impossible to say from the evidence, other than that plaintiff's car and that of defendant entered the intersection about the same time—it is not possible to say which one was first.

Victor G. Anderson, driver of plaintiff's car, and Dr. Joseph Dantone, who was in the car with him, both say that they entered the intersection first, but their testimony also shows that defendant's car arrived there about the same time, driving, they claim, at a speed which they estimate at 30 or 35 miles an hour.

Louis P. Ashley, defendant, and Terry Alexander, riding in the car with him, going east on Coleman avenue, both declare that they were the first to enter the intersection; that they slowed down when they reached it and changed gear and kept going; that plaintiff's car struck their car after they had crossed more than half over; that plaintiff's car came into the intersection at a speed which they estimate at 30 or 35 miles an hour.

C. W. Beck, also riding in defendant's car, testifies favorably to his contention.

Witnesses for the plaintiff and defendant speak of the southwest corner of the intersection as a blind corner. The reason it is so called is that there is a building there so that a party going north on Cypress street cannot see a party approaching from the west on Coleman avenue until he practically enters the intersection. And, in the same way, a party coming east on Coleman avenue cannot see a person coming north on Cypress street until he practically reaches the intersection. The corner is therefore very dangerous.

The ordinance of the city of Hammond provides for automobiles within the incorporated limits a speed not greater than 15 miles an hour.

It is further provided by ordinance that "vehicles traveling on the following streets have the right of way approaching on intersecting streets, namely, Cypress street, from East Thomas street to East Coleman Avenue. All automobiles or other vehicles approaching the above streets from intersecting streets shall, before crossing or turning into same, come to a full stop."

In the reasons for judgment given by the judge a quo, it is stated that the testimony discloses that plaintiff's car was being operated in a careful, prudent manner and at a reasonable rate of speed, proceeding along South Cypress street on the right side of said street in a northerly direction, when at the intersection of said street with Coleman avenue, etc.; further states that defendant, Ashley, admits that he did not stop his car before entering the intersection, as required by the traffic regulations of the city, but that he almost stopped. Looking at Ashley's admitted fault in not having come to a full stop, the lower court places on him the entire blame and sole responsibility for the collision.

The opinion states that these traffic regulations and ordinances are designed for the protection of human life and the safeguards of property, and should be literally observed. We agree with this statement where ordinances have such an end in view. Jones v. New Orleans Ry. & Light Co., 123 La. 1060, 49 So. 706; Belden v. Roberts, 3 La. App. 338; Johnston v. Jahncke Service, Inc., 7 La. App. 348, and others. But, where an ordinance does not have such end in view, the same strictness of enforcement is not recognized. Lopes v. Sahuque, 114 La. 1004, 38 So. 810, and others to the same effect.

The duty to stop, before crossing a railroad track, is understood as follows:

"As to the obligation to stop before crossing a railroad track, that must not be accepted so literally as to require a person upon approaching a railroad track to come at once to a position of absolute immobility; but common sense and common practice both indicate that it will suffice for such person to have his own motion so checked and under control that he may stop instantly if need be." Aymond v. Western Union Telegraph Co. et al., 151 La. 184, 91 So. 671, 672. Other decisions on same subject, Holstead v. Vicksburg, S. & P. R. Co., 154 La. 1097, 98 So. 679; Draiss v. Payne, Agent, 158 La. 652, 104 So. 487.

But this decision and others such as Holstead v. Vicksburg, S. & P. R. Co., 154 La. 1097, 98 So. 679, and Draiss v. Payne, Agent, 158 La. 652, 104 So. 487; Act No. 12 of 1924, are not authorities for the construction of city ordinances regulating

speed on the streets of the city providing right of way streets, and that automobiles being driven on certain streets shall on coming to certain street intersections come to a full stop.

Such ordinances have for their purpose the protection of life, limb, and property, and, when they contain the express command that all automobiles coming to certain designated street intersections "shall, before crossing or turning into same, come to a full stop," they must be substantially obeyed.

We therefore differ with the lower court in the conclusion reached, that Ashley was entirely to blame and is solely responsible for the collision.

The evidence introduced by the plaintiff shows that his car was being driven at the time, on Cypress street, beyond the speed limit. Anderson says, "I was driving about 18 or 20 miles an hour, as near as I can judge." In another place he says he did not look at the speedometer but "judged his car to be going 18 miles an hour." In another place:

"Q. Then, as I get your testimony as to the rate of speed you were going, according to the best of your judgment—
"A. I would say that it wouldn't be three miles variation either way.
"Q. Eighteen or twenty?
"A. No. Eighteen miles per hour and three miles more or less. I would say the exact speed we were going was 18 miles per hour."

Dr. Dantone, questioned on the subject, says he was not noticing the speedometer.

"Q. Could you estimate the speed you were travelling in the car in which you were riding?

"A. I think, coming down the street in the middle of the block, 25 miles an hour, and when we neared the intersection we slowed up; it was 18 or 20, as the correct speed."

In another place he says, "We were going 25 miles an hour but reduced the speed as we entered the intersection."

The court has no right in the enforcement of the city ordinance to hold that 3 or 5 miles an hour above the speed limit will not be taken into account when such excess was, as in this case, the very thing that brought about the collision, because to do so is to set aside the ordinance.

Defendant and his witnesses estimated that plaintiff's car entered the intersection running a great deal faster than Messrs. Anderson and Dantone claim was the case. But for the purpose of this opinion it may be said to have been as claimed by the plaintiff, in which event the statement in the opinion that the speed of plaintiff's car was reasonable must be understood to mean that 18 or 20 miles an hour is to be looked on as not negligent, although the city ordinance fixes the limit at 15 miles an hour, and it is at the same time plain that, if plaintiff's car had not been going faster than 15 miles an hour, defendant's car would in all probability have gotten to the intersection, crossed it, and passed on beyond before plaintiff's car arrived there, and there would have been no collision.

According to Ashley and Terry Alexander and C. W. Beck, riding in the car with him, he slowed down as he came to the intersection with Cypress street, but did not come to a full stop; he almost stopped.

According to Messrs. Anderson and Dantone, defendant's car came into the intersection at 30 or 35 miles an hour, but, for the purposes of the decision of the present case, suppose his speed not to have exceeded 15 miles an hour, and take into account only the failure of Ashley to obey the ordinance that drivers, before crossing this intersection, must come to a full stop, upon which the judgment against him is based: .

Mr. Ashley says on this subject:

"I brought my car to almost a dead standstill."

In another place he says, answering a question:

"Q. Did you come to a full stop?
"A. No, sir. I put my foot on the brake and was not driving fast to begin with, but I didn't come to a dead standstill. I was going the average, where there is so much traffic."

He says in another place that there was no stop sign at the crossing.

Terry Alexander, riding in defendant's car, says:

"Mr. Ashley didn't come to a stop, but he changed gear. He didn't bring the car to a stop, he just shifted gears. I wasn't looking, but I just supposed it slowed down and he went onto the street in low gear," etc.

C. W. Beck, the other party in defendant's car, says:

"We were travelling about 20 or 25 miles an hour and at the crossing of Cypress street we slowed down to five miles an hour, enough to avoid a car being nothing in the way," etc.

So defendant did not stop before entering the crossing, he only slowed down.

If he had come to a full stop, plaintiff's car would in all probability have gotten through it and passed on beyond, before defendant could have started up again, and there would have been no collision on that account. It is therefore plain that the disobedience of the driver of plaintiff's car in driving faster than the ordinance permits, and that of the defendant in not coming to a full stop, as it directs, acting together at the same time and to the same end, brought about the collision, and for which the plaintiff is as much at fault and to blame and as responsible as the defendant. Such being the case, neither can recover from the other. Jones v. New Orleans Ry. & Light Co., 123 La. 1060, 49 So. 706; Belden v. Roberts, 3 La. App. 338; Johnston v. Jahncke Service, Inc., 7 La. App. 348.

Defendant urges in his answer and argues in his brief several defenses which our views, concerning the result of the respective violations of the city ordinances by the driver of plaintiff's car and by defendant in driving his own, makes it unnecessary to consider.

The judgment appealed from is in our opinion contrary to the law and the evidence.

For these reasons the judgment appealed from is annulled, avoided, and set aside, and it is now ordered and decreed that the demand of the plaintiff Dr. Edward L. McGehee against the defendant Louis P. Ashley be rejected.

Availing ourselves of the provisions of Act No. 229 of 1910, sec. 2, it is ordered that the plaintiff pay one-half of the cost in both courts herein and defendant pay the other half.