This suit was consolidated with three other suits now on appeal to this Court, viz.: Jimmie Walter Dillon, individually and on behalf of her minor daughter, Jimmie Dale Dillon v. Joseph Miranne and William John Edwards, 11 So.2d 269; Lettia Edwards, Wife of William John Edwards v. Joseph Miranne, 11 So.2d 270; and William John Edwards v. Joseph Miranne, 11 So.2d 271. All of these four consolidated suits are for the recovery of damages arising out of a collision between a one-half ton truck, owned and operated by William John Edwards, and a car, owned by the defendant, Joseph Miranne, and, at the time, being operated by his minor son, Edward Miranne, the latter admittedly residing with and under the custody and control of his said father. The accident occurred around 2:30 o'clock a.m., July 9, 1939, on Metairie Road, in the vicinity of the Metairie High School, a heavily traveled highway and connecting Kenner and the City of New Orleans.
The allegations of negligence charged against the defendant Miranne are practically identical in all four suits insofar as the cause of the accident is concerned, consequently, what is said in this opinion relative to the liability, vel non, of young Miranne, applies to all four cases.
The Board of Administrators of the Charity Hospital of Louisiana at New Orleans intervened in the instant case and that of Dillon, etc., v. Miranne, supra, seeking judgment against both the plaintiffs and the defendants in these cases for hospital and medical treatment furnished to the respective plaintiffs.
In the above entitled case, Blanke et al. v. Miranne et al., the court below rendered a judgment in favor of Lloyd Blanke, Sr., on behalf of his minor son, Lloyd Blanke, Jr., for injuries received by the latter, in the sum of $750, and a separate judgment in favor of Luella Porche, wife of Lloyd Blanke, Sr., for injuries received by her in the sum of $1,500. The judgments in favor of said plaintiffs were directed and are recoverable against William John Edwards, solely, the trial court having rejected and dismissed the demands of plaintiffs as against the co-defendant Joseph Miranne. The two judgments further recognized and maintained the intervention of the Charity Hospital, the court below rendering judgment in favor of said intervenor and against Edwards only, for the sum of $51.50. In the other suits, the defendant, Joseph Miranne, was absolved of all liability to the respective plaintiffs, separate judgments being rendered by the court below, decreeing as follows: —
1. In the Dillon case, supra, judgment was rendered in favor of both defendants rejecting and dismissing plaintiff's suit.
2. In the Lettia Edwards and William John Edwards cases, supra, brought solely against the defendant, Joseph Miranne, judgment was rendered rejecting and dismissing their suits.
It may be noted at this time that subsequent to the trial of these cases below, William John Edwards died, and his widow Lettia Edwards, as his sole and only heir at law, was substituted in his stead.
The plaintiffs have taken separate appeals in all four cases. In the above entitled case, the defendant Edwards and Lettia Edwards have also appealed from that portion of the judgments decreeing his, Edwards', liability for damages in the amounts stated above, and plaintiffs have answered the appeal asking that the amounts so awarded be increased to that originally prayed for.
It is the contention of the plaintiffs that Edwards was driving at a moderate rate of speed on his right side of the roadway, and that the Edwards truck was being operated in a careful and cautious manner; that Miranne's minor son was driving his car in the opposite direction, or west, at an excessive rate of speed, swaying and zigzagging from one side of the road to the other; that Edwards, who was then driving at a speed of fifteen to twenty miles per hour, reduced his speed, pulling over to the edge of the pavement on his side of the roadway, the right wheels of the truck being completely off of the pavement and on the gravel shoulder; that the Miranne car, being driven on the wrong, or left, side of the roadway, ran into and collided with the Edwards truck, the left front wheel, fender and bumper of the Miranne car striking the left front wheel of the Edwards truck, throwing several of the latter's *Page 266 
occupants into the roadway, and the Miranne car, after turning over, coming to a stop at least two hundred feet away, practically perpendicular across the river or south side of the roadway, with its front end up against the embankment skirting the outer side of the shoulder of the roadway.
Defendant, Edwards, denied any negligence on his part, claiming that the accident was occasioned solely through the negligence of the operator of the Miranne car.
The defendant Miranne denied any negligence on the part of his minor son, and contended that the sole and proximate cause of the accident was the negligence of Edwards in crossing over the center line of the roadway onto the side of the road occupied by the Miranne car, and running into the latter. He further answered, pleading the faulty construction of the truck to the knowledge of plaintiffs, and the latters' carelessness in seating themselves in the truck as indirect contributing causes to the accident and resulting injuries.
It appears that Metairie Road, particularly at the site of the accident, runs east and west, with Pontchartrain Lake towards the north, and the Mississippi River towards the south. The Metairie High School is located on the south or river side of the roadway and the accident occurred in front of its main entrance gate. There is a gradual left-hand curve in the roadway east of the scene of the accident. The roadway is black-topped, having a width of approximately fifteen feet, and a dimly perceptible center line dividing the opposite lanes of traffic. On the lake or north side of the roadway there is a gravelled shoulder about five feet wide, and on the school or south side, a gravelled shoulder about twelve to fifteen feet wide. Large trees, however, slightly reduce the vehicular use of the latter. The Edwards truck was being driven from Kenner to New Orleans, or in an easterly direction. It is shown that this truck was converted from a passenger automobile, and a home made cab and truck body built thereon. On the night of the accident all of the plaintiffs had left the Edwards home for a fishing trip. Mrs. Dillon occupied a seat in the cab near Edwards, the driver. Lloyd Blanke, Sr., his wife, Luella Porche, their minor son, Lloyd, Jr., Jimmie Dale Dillon, the minor daughter of Mrs. Dillon, and Lettia Edwards, wife of the truck driver, were seated in the rear, on the floor of the truck. The sides of the truck are shown to be boards twelve inches wide, and, at the time of the accident, the tail board, at the rear of the truck, was raised and fastened to the sides. It is also shown that the Miranne car was being driven in a westerly direction, or towards Kenner, and that Miranne was its sole occupant. It appears that after taking a girl friend to her home, it being around 2 o'clock in the morning, he telephoned his mother seeking permission to attend 3:15 a.m. mass before returning home. At her suggestion not to do so, and while returning to his home, the unfortunate accident occurred.
We find little difficulty in determining where responsibility should rest in this instance, even though we note some degree of conflict in the testimony presented on behalf of the litigants.
The principal question involved is which driver — Edwards or young Miranne — was on the wrong side of the road when the collision occurred. Each claims that he was on his right side and that the other was on the wrong side of the roadway. The only eyewitnesses to the accident were some of the occupants of the Edwards truck and young Miranne. Obviously, one or the other was on the wrong side of the road, otherwise there would not have been a collision of the two vehicles, and these law suits would not be before us.
Edwards, the truck driver and Mrs. Dillon, who was seated on the front seat beside Edwards, testify that the truck was being driven at a speed of fifteen to twenty miles per hour on the right or school side of the roadway; that they saw the Miranne car approaching with bright burning lights at a fast speed, which they approximate at sixty to seventy miles per hour, and being driven on its left or wrong side of the roadway; that Edwards slowed down to about ten miles per hour and pulled over to the extreme right edge of the road, so much so that the right wheels of the truck were on the gravelled shoulder; that in spite of these efforts, the Miranne car continued its course and speed, its left front wheel striking the left front wheel of the truck, catapulting Mrs. Blanke, her minor son, Lloyd, Jr., and the Dillon girl to the pavement, Mrs. Blanke falling over the body of her son, and the Dillon girl beneath the rear wheel of the truck; that it required the efforts of several persons to lift the truck, the wheel of which rested on the Dillon girl's arm and chest; that the *Page 267 
Miranne car "slid" along the side of the truck, coming to a standstill practically two hundred feet away, resting almost perpendicularly across the roadway with the front end facing the school grounds and against the shoulder embankment.
Lloyd Blanke, Sr., who was sitting on the floor of the truck in the center towards the rear, stated that he saw the reflection of the lights of the oncoming Miranne car, but this fact did not arouse his curiosity; that he then noticed the truck being slowed down and being pulled over to the right side near the trees on the shoulder in front of the Metairie School; that the Miranne car struck the front end of the truck, and came to a stop one hundred and fifty feet away; that he jumped out, found his wife unconscious on the ground, bleeding from the mouth and ears, and lying on top of his young son.
Leroy Hall, operator of a garage and repair shop, who was called to pick up the Miranne car, testified that he reached the scene shortly after the accident; that the truck was resting partly off of the roadway on the school or south side; that the Miranne car was about two hundred feet away from the rear of the truck; that the left front wheel of the Miranne car was practically off; that the left front side and most of the front was damaged, the motor knocked back, the axles were bent and that there were brush burns on the right side; that "it looked like it was dragged along the ground"; that the left fender was badly torn, and the door handle on the right front door broken. It is also amply established that the steel top was badly "dented in", or as was testified "mashed in".
Young Miranne testified that he was driving about thirty miles per hour, and that, as he came around the curve of the roadway, travelling on his right or north side of the roadway, he saw an object with one light approaching him, he being then unable to conclude whether it was an automobile, truck, or motorcycle; that when he first saw this approaching vehicle he was about seventy-five yards away; that when he was about twenty-five feet away from the approaching vehicle, he saw that it was a truck and that it was being driven beyond the center line or on the wrong or north side of the roadway; that he thereupon swerved his car to the right, but too late to avoid the collision; that his head struck some portion of his car, which, together with other injuries, caused him to lose consciousness shortly after his car came to a stop. He further testified that the Edwards truck was being driven at a moderate rate of speed.
Aside from these eyewitnesses we have the testimony of several other witnesses, testifying on behalf of plaintiffs and defendants, all of whom, however, reached or passed the scene some time after the accident. The substance of the testimony of the witnesses summoned by the defendant Miranne, and which is relied upon in corroboration of the testimony of young Miranne, is that the Edwards truck was partly astride the center line of the roadway at a forty-five degree angle, with its front end facing the north or lake side. On the other hand, the testimony of plaintiffs' witnesses is that the Edwards truck was on its right side of the roadway, partly off of the pavement.
Our examination of the record convinces us that the collision occurred immediately after young Miranne had rounded the inside of the left curve in the roadway, and that in negotiating this curve he followed, particularly at that hour of the morning when approaching traffic is light, a tendency, too often indulged in, of veering towards his left or the wrong side of the roadway. On emerging from this curve, he was faced with the approaching Edwards truck at too close proximity. Undoubtedly, the Miranne car was being driven at an excessive speed. This conclusion is inescapable when we consider the damage it sustained, the distance it travelled beyond the point of the collision, and the force of the impact which, as shown, was sufficient to catapult three occupants, seated on the floor of the truck, onto the pavement.
The record amply shows that the Edwards truck, at the moment of the collision, had not crossed the center line, but was being driven on its right or the school side of the roadway, and that the Miranne car was being driven on the wrong or south side. Faced, as he was, with the Edwards truck directly in front of him, and as he says, about seventy-five yards away, unable to conclude whether it was a car or motorcycle, young Miranne took no precaution whatever until he reached a point twenty-five feet from the truck. He did not slow down his rate of speed nor pull over to his right. It was only after he was a distance of twenty-five feet that he realized the grave emergency and *Page 268 
endeavored to swerve his car to the right, but much too late. This indicates clearly that young Miranne was operating his car carelessly and heedlessly and without such control as prudence dictated. Besides, though he testifies that he swerved to the right, it is significant that he did not drive off of the pavement. It is shown that the roadway is about fifteen feet wide, thus allowing slightly less than eight feet for each lane of traffic. Had the Miranne car been driven on its right side, occupying its eight foot lane, and had it been swerved to its right as hard and quickly as young Miranne would have us believe, unquestionably, it would have been driven off of the pavement onto the shoulder and this accident with its unfortunate consequences would have been avoided.
Defendant, Miranne, strenuously argues that the position of the Edwards truck after the accident, testified to as being at a forty-five degree angle across the roadway, with the front end across the center line, is conclusive proof of it being across the center line at the moment of the impact. We agree that physical facts surrounding an accident are strongly corroborative of how it occurred. However, such secondary proof must yield to the force of primary evidence, the testimony of eyewitnesses, particularly when supported by physical evidence. It is equally as plausible to conclude that when the left front wheel of the Miranne car struck the left front wheel of the truck, the Miranne car then swerved obliquely to the right in an effort to escape the impending crash, the force of the impact forced or pulled the truck across the roadway in the position defendant Miranne contends it came to rest after the accident.
Our courts readily apply the rules of the road which require the drivers of vehicles to drive on the right half of the road, except when overtaking or passing another vehicle, and require the drivers of vehicles proceeding in opposite directions to pass each other to the right, each giving to the other one-half the travelled portion of the road for a distance of at least two hundred feet before meeting. Rules 5 and 6, Section 3 of Act 286 of 1938. An observance of this rule by the driver of the Miranne car would have avoided the accident.
Our conclusion is that the proximate and sole cause of the accident was the negligence of the driver of the Miranne car in driving on the wrong side of the roadway shortly previous to and on meeting the Edwards truck coming from the opposite direction.
We will now discuss the quantum of damages to be awarded to the plaintiffs in the Blanke case.
The record amply establishes that Luella Porche, wife of Lloyd Blanke, Sr., suffered a fracture of the base of the skull with cerebral trauma or contusion, the effect of which upon the sensory region of the brain, was to destroy her sense of smell and an alteration in her sense of taste, she having no taste sensation for salt, seasoning or sweets. This loss of taste and smell is attributed to and explained as a residual of the skull fracture, though this sensory condition, as testified to by the medical experts, should not be permanent. Aside from this injury she received multiple small lacerations and minor brush burns and contusions of the face, body and left leg. She remained in the hospital about one week, and in bed at her home for the following two weeks, during which time her memory and ability to recall events was seriously affected. During the subsequent three months she was unable to attend to her household duties, accepting the generous aid of neighbors. Considering that her injuries were serious we feel that an allowance of $2500 is a proper award.
Lloyd Blanke, Jr., six years of age, suffered a small laceration of the left side of the scalp, a laceration of the right groin fold one inch long, and brush burns of the leg and knee. The scar on the left side of the scalp is permanent, but will eventually disappear beyond the hair line. He was confined at the hospital five days and though he had fully recovered from the effects of his injuries within one month following the accident, the laceration of the groin had remained sensitive for several months, we think an allowance of $500 adequate.
It is also shown that Lloyd Blanke, Sr., incurred medical expenses caused by the injuries suffered by his wife and son in the amount of $25. Having sued individually to recover this amount he is entitled to have this claim so recognized.
We fail to find in the record any appeal taken or perfected by the Board of Administrators of the Charity Hospital from the judgment dismissing plaintiffs' suit, as well as its intervention, as against *Page 269 
the defendant, Joseph Miranne. Though the court below rendered judgment in its favor for the amount of $51.50, as against William John Edwards, our reversal of the lower court's decree as to Edwards nullifies this award. Not having taken an appeal on the lower court's dismissal of its and plaintiffs' suit as against Miranne, whatever rights the Board of Administrators of Charity Hospital may have had against the said Miranne by virtue of Act 289 of 1938, may not be availed of in this proceeding. Morris v. Hava, La.App., 180 So. 216; Lervick v. White Top Cabs, La.App. 10 So.2d 67.
For the reasons assigned, it is ordered, adjudged and decreed that the judgments appealed from be annulled, avoided and reversed and it is now ordered that there be judgment in favor of William John Edwards dismissing plaintiffs' suit.
It is further ordered that there be judgment herein in favor of Lloyd Blanke, Sr., for himself individually, and against the defendant, Joseph Miranne, in the sum of $25, and in favor of Lloyd Blanke, Sr., for the benefit of his minor son, Lloyd Blanke, Jr., and against the defendant Joseph Miranne, in the sum of $500 with legal interest from date of judicial demand until paid.
It is further ordered that there be judgment herein in favor of Luella Porche, wife of Lloyd Blanke, Sr. and against the defendant, Joseph Miranne, in the sum of $2500 with legal interest from date of judicial demand until paid. Defendant, Joseph Miranne, to bear the costs in both courts.
Reversed.