JANVIER, Judge.
In the Parish of St. Bernard, a few miles below the City of New Orleans, at about eight o’clock on the night of March 6, 1948, young August Gonzales who, at the time, was 19 years of age, sustained physical injuries when he, a pedestrian, was struck by an automobile owned and driven by Ralph Hanle very near to the intersection of Paris Road and the State Highway which parallels the Mississippi River on the east bank and extends from New Orleans to Pointe-a-la-Hache. Young Gonzales had alighted from a public bus, which was on its way in a down river direction, and he was going to an automobile filling station on the other side of the highway when he was struck. His father, Celestino Gonzales, on behalf of his said minor son, brought this suit against Hanle, alleging that the accident had been caused solely by negligence of Hanle, and, on behalf of his minor son and for his own use and benefit, he prayed for judgment against Hanle in the sum of $75,382.50.
Hanle admitted the occurrence of the accident, but denied that he had been. at fault in any way and averred that the accident had resulted from negligence on the part of young Gonzales, ■ who “r.an across the highway, immediately in front of the moving car * * In the alternative that it might appear that Hanle was in any way at fault, he averred that the proximate cause of the accident was not his own negligence but was the contributory negligence of young Gonzales in running across in front of the moving car.
In the Twenty-fifth Judicial District Court for the Parish of St. Bernard, there was judgment in favor of plaintiff and against Hanle in the sum of $843.00, and Hanle has appealed only devolutively.
*371 Plaintiff answered the appeal, praying that the award he increased to the amount originally prayed 'for.
The highway in question, on whi.ch the bus in which Gonzales had been riding was travelling, parallels the river on its east bank and is joined by Paris Road, another highway which, at almost right angles, extends from that road in an easterly direction. This junction point of these two highways is a few miles below the City of New Orleans and is near to that large grove of trees familiarly known as The Packenham Oaks. From a point near the end of the grove of trees and extending towards New Orleans, there is a neutral ground between the two driveways of the highway. That neutral ground is raised above the surface of the driveways. Below that point, in a down-river direction, the neutral ground is not raised, and is about level with the driveways.
Young Gonzales had left New Orleans in the bus and, as we have said, intended to go to a point very near to that intersection, in fact to a filling station which was on the upper side of the Paris Road and some 80 to 100 feet on the east side of the main highway. When the bus stopped just about opposite the end of the Paris Road, Gonzales alighted and waited for the bus to start. He then crossed the river side of the roadway and the neutral ground and either had crossed, or was attempting to cross, the roadway on the other side when he was struck by the automobile driven by Hanle, who was on his way in an up-river direction towards the City of New Orleans.
It is the contention of Gonzales that he had completely crossed the second driveway and was ten feet or more on the east side of it when Hanle’s automobile left its proper position on the highway, turned to its right and ran him down.
It is the contention of Hanle that, just as his car, going at a speed of; about 25 miles per hour, reached a spot only about 20 feet from the point at which Gonzales was struck, the young man, suddenly arid without warning, dashed into the roadway, and that he, Hanle, in- an effort to stop, swerved his car as far as he could 'td its right, but that he -could not 'avoid striking Gonzales, which he did, a few feet on the right of the up-river driveway.
The filling station, which we have mentioned, is located just off the intersection and when Hanle’s car was turned to' its right just after passing Paris Road, it traveled in a direction towards that filling station.
After the accident, Gonzales, who was knocked unconscious, was found lying on the ground about 20 feet from the pumps of the filling station, and, since the record shows that this filling station was quite a distance from the edge of the road, it is obvious that Gonzales had either traveled a considerable distance after reaching the road before he was struck, or he was struck and knocked a considerable distance in that direction. The witnesses all agree that, when found, he'was'lying about 20 feet from the pumps of the filling station and about 20 or 30 feet from the edge of the highway. The record also shows that, in the maneuver which Hanle made in an effort to avoid striking Gonzales, he almost completed a U-turn to his right so that when his car was brought to a stop, it had almost reversed its direction, and was heading, to some extent, towards the Paris Road, and it had gone about 25 feet beyond the point at which Gonzales was found.
Gonzales says that when he intended to cross the highway, he looked first to. his left and saw no vehicle coming in a down-river direction, and then looked to his right, and saw none approaching in an up-river direction. It is very obvious that he did not-.look carefully, because it is certain that Hanle’s car was approaching and that it could not have been very far away, since there is no evidence that .it was approaching at a speed which was in excess of 25 or 30 miles an hour. We say, then, that Gonzales must have been negligent in not noticing the approaching car. .
But - if, by his negligence, young Gonzales placed himself in a position of peril, he may still have a right to recover for his injuries if it is made to appear that when he was in that 'dangerous position/ there yet remained an opportunity for Hanle, had he been exercising care, to *372 avoid him. See Rottman v. Beverly, 183 La. 947, 165 So. 153; Jackson v. Cook, 189 La. 860, 181 So. 195, and innumerable other cases decided since. And the record leaves no doubt in our minds that there was ample opportunity for Hanle to have avoided striking Gonzales had he exercised proper care.
If Gonzales had completely crossed the highway and was walking on the shoulder towards the filling station, then there is no doubt whatever that the proximate cause of the accident was Hanle’s turning aside from the driveway and running Gonzales down from the rear. Even if Gonzales had not completely crossed the driveway, we think it quite certain that he had practically crossed it and that, therefore, during the process of crossing the roadway, he had been in full view of the approaching Hanle car for a- sufficient time for Hanle to have stopped had he been on the alert. We say that Gonzales must have practically crossed the highway because we cannot believe that if he was even near the middle of the highway he could have been knocked by the Hanle car completely across it and some 20 or 30 feet to the right.
 There is a circumstance which is not stressed by either counsel but which may, in fact, have accounted for Hanle’s car being off th.e highway to its right and that is that Hanle says that he “was going to stop about 150 feet from the accident at a place of business to get a pack of cigarettes * * There is no place of business on the other side of the road at which he could have stopped for the cigarettes, and it may be that he swerved to his right to go to the place at which he intended to buy the cigarettes and that, as he did so, he saw young Gonzales ahead of him and then swerved again to his right and completed the U-turn which some of the witnesses refer to. Whatever may have been the cause of his turn to the right, we are convinced from the record that had Hanle been operating his car with proper care, he could have avoided striking Gonzales whether the latter was on the highway or had completely crossed it. Consequently, Hanle is responsible and legally liable for such damage as Gonzales sustained.
In the Judgment below he was awarded only $823.00, made up of the following items ■:
For physical pain and suffering $500.00
For damage to suit of clothing 18.00
For loss of wages, 325.00
 Since the loss of wages was testified to by young Gonzales, he is entitled to recovery on that item. A minor is entitled to retain the wages earned. See Article 226 of the Civil Code. Since he tes-itfied that he bought the clothes himself and that he paid for repairing the damage sustained by his clothes, he is entitled to that item also.
According to the record of the Charity Hospital, and that is all that we have before us, since no doctor was placed upon the stand, Gonzales’ physical injuries consisted of a skull fracture about three centimeters in length, and a fracture of the upper third of the fibula of his leg. It is almost impossible to read many of the entries of the Charity Hospital record because the photostatic copies thereof are practically illegible. We can make out that a small piece of tantalum was used to close the fracture of the skull and can make out from the record that recovery from that injury and from the fracture of the leg was uneventful. Gonzales remained in the Charity Hospital on his first visit for about four days and returned later and remained in the hospital fourteen days. He says that he can no longer take part in the usual sports engaged in by young men his age, though we have no medical evidence to corroborate this.
Although the record, except for the evidence found in the hospital record, does not contain one word of medical testimony which would assist us in arriving at a conclusion as to the seriousness of the injuries, nor as to whether they will produce any permanent disability ■ or permanently interfere with the normal activities of the young man, it is quite apparent that the amount awarded in the district court is entirely inadequate.
*373 In Webb v. Dunn, La.App., 15 So.2d 129, $2,200.00 was allowed for a fracture at the base of the skull, and in Blanke v. Miranne, La.App., 11 So.2d 264, we allowed $2,500.00 for a somewhat similar fracture. In Gauvereau v. Checker Cab Co., 14 La.App. 448, 131 So. 590, we allowed $3,500.00 for the fracture of a skull where it appeared that the loss of the sense of taste had resulted, and in Dill v. Colley, 3 La.App. 305, for a fracture of the skull and concussion on the brain, we allowed $3,000.00. The fracture in this case impresses us as a very minor one, and although a small plate was placed in the skull, as we read the record, there will be no permanent impairment of any of the senses as a result thereof.
In Blackburn v. Chent, La.App., 42 So.2d 288, we allowed $3,500.00 for the fracture of the leg in the case of an older man who earned his living peddling fruit and vegetables. In Caldwell v. Unity Industrial Life Ins. Co., La.App., 17 So.2d 757, $1,500.00 was allowed for a simple fracture of the leg of a girl seventeen years old. In Le Blanc v. Louisiana Highway Commission, La.App., 5 So.2d 204, $800.00 was allowed for the fracture of both bones of the leg just below the knee. That was in the case of a nine year old boy. In Thomas v. Shippers’ Compress & Warehouse Co., La.App., 158 So. 859, this court awarded $1,500.00 for a fracture of the fibula and injuries to the knee, and in Breaux v. Roussell, La.App., 151 So. 267, we awarded to a truck driver $2,500.00 for a broken fibula.
See, also, Chavers v. A. R. Blossman, Inc., 45 So.2d 398, in which the Court of Appeal, First Circuit, reduced an award of $3,500.00 to a woman for a simple fracture of the fibula by $1,000.00.
There are numberless other cases involving similar fractures and, from all of them, we gain the impression that an award of between $1,500.00 and $2,500.00 for the fractured leg would be consistent with earlier awards and that about $1,-000.00 would be • proper for the fracture of the skull. Taking all of these earlier cases into consideration and also bearing in mind the tremendous increase in the cost of living during the past few years, we have concluded that $3,500.00 should be awarded to the young man for the injuries sustained by him.
The actual monetary losses claimed and allowed are sustained by the record. Accordingly, the judgment appealed from is amended by the increase in the amount thereof to $3,843.00.
As amended, the judgment is affirmed at-the cost of appellant.
Amended and affirmed.